**[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 302.]**

IN RE ELECTION CONTEST OF DECEMBER 14, 1999 SPECIAL ELECTION FOR THE
OFFICE OF MAYOR OF THE CITY OF WILLOUGHY HILLS.

[Cite as *In re Election Contest of Dec. 14, 1999 Special Election*,
2001-Ohio-45.]

*Elections—Contest of election—Common pleas court's denial of election contest
challenging result of city of Willoughby Hills special mayoral election
affirmed.*

(No. 00-628—Submitted January 9, 2001—Decided April 11, 2001.)

APPEAL and CROSS-APPEAL from the Court of Common Pleas of Lake County,
No. 00CV000049.

_____

*Per Curiam.*

{¶ 1} At the November 2, 1999 general election, appellant and cross-appellee, Ted Dellas, appellee and cross-appellant, Morton E. O'Ryan, and two other individuals were candidates for the office of Mayor of the city of Willoughby Hills, Ohio. Dellas and O'Ryan received the highest number of votes, but neither received a majority. Therefore, under the Willoughby Hills Charter, a special mayoral election between Dellas and O'Ryan was held on December 14, 1999.

{¶ 2} Both Dellas and O'Ryan participated in a program of the Lake County Board of Elections in which, in the weeks before the election, they received lists of electors who had requested and submitted absentee ballots for the December 14, 1999 special election. This list of absentee voters as well as all pertinent records, including applications for absentee ballots, was available for inspection at the board of elections. In addition, the board, in accordance with R.C. 3503.23, made available for public inspection an official registration list of all electors eligible to vote in the special election.

{¶ 3} By applications signed and dated on November 22, 1999, William J. and Eleanor L. McFarlane requested absentee ballots for the special election because they would be absent from the county on December 14. They requested that the absentee ballots be mailed to an address in Texas. The McFarlanes completed the ballots and sent them back to the board in time for the special election. The McFarlanes have been registered voters in Lake County since September 1972 and have voted in all county elections since that date with the sole exception of the 1973 general election. No one challenged the qualifications of the McFarlanes to vote in the special election before the results were certified.

{¶ 4} Following the special election, the director of the board of elections, Janet F. Clair, learned that the McFarlanes had registered to vote in Texas but that they had never voted in that state. Clair believed that the McFarlanes' Texas registration was probably unintentional because they subsequently canceled that registration. The board had not been aware of the McFarlanes' Texas registration before the special election.

{¶ 5} In November 1999, the board also received requests from Mark Pogany, Amy Penfield, and Jeanette C. Jilek for absentee ballots for the December 14, 1999 special election. The board subsequently received ballots sealed in the identification envelopes specified in R.C. 3509.04 and signed and dated by Pogany and Penfield, and purportedly by Jilek. No one raised the issue of the propriety of these absentee ballots until after the special election. The board compared the signatures on the absentee-ballot applications with those signatures on the identification envelopes of the returned absentee ballots and determined that they matched.

{¶ 6} On December 27, 1999, the board certified the results of the December 14 special election: 1,179 votes for O'Ryan and 1,173 votes for Dellas. Before the certification of the election, Director Clair had investigated potential irregularities that had been brought to her attention and reported her written

2

findings to the board. As part of her report, Clair found that in Precinct BB at the special election, the poll book and signature book reflected that there had been three hundred eighty voters, but the voting machines indicated that there had been three hundred seventy-eight votes. Clair also noted that in Precinct CC, the poll book and the signature book specified three hundred twenty-four votes, but the voting machines recorded three hundred twenty-seven votes. The poll books did not reveal any reasons for these discrepancies,[1] but the poll workers noted that in Precinct BB, there were two "fleeing voters," *i.e.* voters who signed in to vote but left without voting.

{¶ 7} Because the winning margin for O'Ryan over Dellas in the special election was less than one-half of one percent of the total vote, the board conducted a recount pursuant to R.C. 3515.011 on January 1, 2000. On that same date, the board certified the same result as the original count: 1,179 votes for O'Ryan and 1,173 for Dellas, *i.e.*, a margin of six votes.

{¶ 8} On January 10, 2000, Dellas filed an election contest under R.C. 3515.08 in the Lake County Court of Common Pleas to challenge O'Ryan's election as mayor. In his petition, Dellas claimed that certain irregularities had occurred, including the different recorded vote totals for the poll and signature books and machines in Precincts BB and CC. Dellas requested that the court pronounce judgment on which candidate had been elected or if it could not pronounce judgment for either candidate, that the court declare the result uncertain and void the election.

{¶ 9} At trial, Dellas introduced evidence from a document and handwriting expert that Pogany's and Penfield's applications for absentee ballots had been signed by persons other than Pogany and Penfield. The expert further testified,

---

1. R.C. 3501.26(E) provides that "[i]f the number of voted ballots exceeds the number of voters whose names appear upon the poll books, the presiding judge shall enter on the poll books an explanation of such discrepancy, and such explanation, if agreed to, shall be subscribed to by all of the judges." See, also, R.C. 3505.26(E).

however, that the identification envelopes for the completed absentee ballots of Pogany and Penfield contained their genuine signatures. Neither Pogany nor Penfield testified.

{¶ 10} Jeanette Jilek and her husband, Edward, testified that Edward signed Jeanette's name on her absentee ballot at her request because she was too ill to sign it. Jeanette voted for O'Ryan.

{¶ 11} Director Clair specified that Dellas could have objected to these absentee ballots as well as the McFarlanes' absentee ballots before the election but failed to do so.

{¶ 12} In March 2000, the common pleas court found that the three votes of Pogany, Penfield, and Jilek were invalid and reduced the number of votes certified for O'Ryan to 1,176, which was still three more than the 1,173 votes for Dellas. The court held that O'Ryan had been elected Mayor of Willoughby Hills. In so holding, the court rejected Dellas's claims that the McFarlanes were ineligible to vote because of their Texas registration and that vote disparities in Precincts BB and CC constituted election irregularities.

{¶ 13} This cause is now before the court upon Dellas's appeal and O'Ryan's cross-appeal under R.C. 3515.15 from the judgment of the court of common pleas.

{¶ 14} In his appeal, Dellas requests that we reverse the judgment of the court of common pleas and declare the results of the December 14, 1999 special mayoral election uncertain and consequently void. In his cross-appeal, O'Ryan asserts that the trial court erred in deducting two votes from O'Ryan's total based on Pogany's and Penfield's absentee votes, but that the court correctly ruled that Dellas had failed to prove that the claimed election irregularities affected enough votes to change or make uncertain the election results.

{¶ 15} In evaluating these claims, we are guided by several well-established principles, none more important than that " 'our citizens must be confident that

4

*their vote*, cast for a candidate or an issue, *will not be disturbed except under extreme circumstances that clearly affect the integrity of the election*.' " (Emphasis added.) *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 263, 725 N.E.2d 271, 275, quoting *In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio* (1991), 58 Ohio St.3d 103, 105, 569 N.E.2d 447, 450.

{¶ 16} To give full effect to this vote, we will refrain from disturbing an election result unless the evidence establishes that the result was contrary to the will of the electorate, and we must indulge every presumption in favor of upholding the validity of an election and against ruling it void. *Portis v. Summit Cty. Bd. of Elections* (1993), 67 Ohio St.3d 590, 592, 621 N.E.2d 1202, 1203; *Beck v. Cincinnati* (1955), 162 Ohio St. 473, 475, 55 O.O. 373, 374, 124 N.E.2d 120, 122.

{¶ 17} Moreover, under the applicable standard, in order to prevail in his contest of the December 14, 1999 special mayoral election, Dellas had to prove by clear and convincing evidence that one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the special election. *In re Election Contest of Democratic Primary*, 88 Ohio St.3d at 263, 725 N.E.2d at 275-276, citing *In re Election of Nov. 6, 1990*, 58 Ohio St.3d 103, 569 N.E.2d 447, at syllabus.

{¶ 18} With these standards providing the applicable framework, we next consider the parties' claims. O'Ryan defeated Dellas by six votes in the certified vote by the board, but the trial court determined that O'Ryan's margin of victory should be reduced to three because the board should have rejected the absentee votes of Pogany, Penfield, and Jilek. O'Ryan now concedes that Jilek's vote was unlawfully cast and constituted an election irregularity.

O'Ryan's Cross-Appeal: Absentee Ballots of Pogany and Penfield

{¶ 19} O'Ryan claims that the trial court erred in reducing his vote total by the two votes that Pogany and Penfield cast by absentee ballot. The trial court relied

on the testimony of Dellas's handwriting expert to conclude that Pogany and Penfield were not eligible to vote by absentee ballot because their written applications for absentee ballots were not signed by them. R.C. 3509.03 requires that written applications for absentee ballots "shall be signed by the applicant."

**{¶ 20}** Dellas claims that because of R.C. 3515.12, he properly challenged the Pogany and Penfield absentee ballots in his election contest. But the portion of R.C. 3515.12 that Dellas cites merely provides that "[a]ny witness who voted at the election may be required to answer touching his qualification as a voter and for whom he voted." In contrast to the evidence introduced regarding his objection to Jilek's absentee ballot, Dellas did not introduce the testimony of either Pogany or Penfield concerning their absentee-ballot applications, nor did he introduce any evidence of their unavailability to testify. Cf. *In re Election of Swanton Twp.* (1982), 2 Ohio St.3d 37, 39, 2 OBR 581, 583, 442 N.E.2d 758, 760 ("It is indeed noteworthy that while contestors-appellants named seven individuals in their answers to interrogatories who allegedly were permitted to vote on the zoning case though ineligible, these individuals were not called as witnesses").

**{¶ 21}** More important, although "all provisions of election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview, * * * irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters' choice, should not effect a disfranchisement of the voters." *Mehling v. Moorehead* (1938), 133 Ohio St. 395, 406, 11 O.O. 55, 59, 14 N.E.2d 15, 20; *State ex rel. Foreman v. Brown* (1967), 10 Ohio St.2d 139, 151, 39 O.O.2d 149, 156, 226 N.E.2d 116, 124.

**{¶ 22}** Dellas did not introduce clear and convincing evidence of fraud in Pogany's and Penfield's alleged failure to comply with the application-signature requirement of R.C. 3509.03. Moreover, the uncontroverted evidence is that Pogany and Penfield are qualified electors who fully complied with the absentee-ballot requirements of R.C. 3509.04, *i.e.*, they declared under penalty of election

falsification that they would be absent from Lake County on the date of the election and they signed the identification envelopes containing their ballots. Even Dellas's handwriting expert testified that Pogany and Penfield had signed the voter-statement of the identification envelopes. There is no evidence that some unknown, unqualified persons improperly cast their absentee ballots.

{¶ 23} Therefore, based on *Mehling* and *Foreman*, we hold that the court erred in finding that Pogany's and Penfield's absentee ballots should be rejected and used to reduce O'Ryan's margin of victory from five votes (after deducting Jilek's vote) to three votes. In the absence of a preelection challenge or clear and convincing evidence of fraud, the claimed violation of R.C. 3509.03 is insufficient to disenfranchise Pogany and Penfield. We must give full and fair expression to their right to vote.

Dellas Appeal: Absentee Ballots of the McFarlanes

{¶ 24} Dellas contends that the two absentee votes of the McFarlanes should have been rejected because they were ineligible to vote. Dellas claims that R.C. 3503.21 and 3503.33 prohibited the McFarlanes from voting in Ohio when they were also registered in Texas.

{¶ 25} Neither R.C. 3503.21 nor 3503.33 required the board to reject the McFarlanes' ballots. Under R.C. 3503.21(B), "[t]he registration of any elector identified as having changed his voting residence to a location outside his current county of registration shall not be canceled unless the registrant is sent a confirmation notice on a form prescribed by the secretary of state and the registrant fails to respond to the confirmation notice or otherwise update his registration and fails to vote in any election during the period of two federal elections subsequent to the mailing of the confirmation notice." The McFarlanes' Lake County, Ohio registration was never canceled. R.C. 3503.33 involves electors applying for voter registration in an Ohio county when they had already registered in another state or

another county. The McFarlanes, however, were registered to vote in Lake County, Ohio, when they registered in Texas.

**{¶ 26}** Moreover, there is no evidence of fraud by the McFarlanes. *Mehling*, 133 Ohio St. at 406, 11 O.O. at 59, 14 N.E.2d at 20; *Foreman*, 10 Ohio St.2d at 151, 39 O.O.2d at 156, 226 N.E.2d at 124. Instead, the evidence establishes that they have a lengthy history of voting in Lake County, Ohio, and that their registration in Texas was inadvertent. In fact, they never voted in Texas and subsequently canceled their Texas registration.

**{¶ 27}** Therefore, the trial court properly held that the board did not have to reject the McFarlanes' absentee ballots.

The Dellas Appeal: Vote Disparities in Precincts BB and CC

**{¶ 28}** Dellas contends that the differences between the vote totals for the poll and signature books and the voting machines in Precincts BB and CC are election irregularities that render the election result uncertain. In Precinct BB, the poll and signature books recorded two more voters than the voting machines. In Precinct CC, the poll and signature books recorded three fewer voters than the voting machines. Dellas asserts that although one of the two "missing" machine votes in Precinct BB could be attributed to a voter who signed in and left without voting, the rest of the votes (one in Precinct BB and three in Precinct CC) remained unexplained.[2] These claimed irregularities could not have been raised before the election.

**{¶ 29}** We have held that differences between vote totals in poll books and voting machines constitute clear and convincing evidence of election irregularities in an election contest. *In re Election of Nov. 6, 1990*, 58 Ohio St.3d at 120, 569 N.E.2d at 462.

---

2. Although the poll and signature books for Precinct FF also recorded one more vote than the voting machines for that precinct, Dellas does not assert on appeal that this is an irregularity. This vote was accounted for by evidence that one person had signed in and entered a voting machine but failed to cast a vote on the machine.

**{¶ 30}** Therefore, the trial court erred by concluding that these vote discrepancies were not irregularities.

**{¶ 31}** Nevertheless, even if these four votes were deducted from the corrected victory margin of five votes, *i.e.*, the original six-vote margin minus Jilek's vote, it is still insufficient to change or make uncertain the election result. In other words, O'Ryan would still have been elected mayor.

Conclusion

**{¶ 32}** Although Dellas established the presence of irregularities in the December 14, 1999 special mayoral election, the common pleas court properly denied the contest. This is not a case in which "extreme circumstances" manifestly affected the "integrity of the election." *In re Election Contest of Democratic Primary*, 88 Ohio St.3d at 267, 725 N.E.2d at 279. "Our holding is in accordance with the tendency of this court to insist * * * that after an election, unless it is shown that the result was contrary to the will of the electorate, it will not be disturbed." *Mehling*, 133 Ohio St. at 408, 11 O.O. at 60, 14 N.E.2d at 21. We have "long adhered to the position that, '[t]he survival of our system of government requires that proper respect be given to the will of the people as expressed at the ballot box.' " *Swanton Twp.*, 2 Ohio St.3d at 38, 2 OBR at 582, 442 N.E.2d at 759, quoting *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 86, 1 OBR 122, 123, 438 N.E.2d 410, 412. Dellas did not establish that the result of the special election was contrary to the will of the electorate. In fact, proper respect for the will of the people in general and for absentee voters such as the McFarlanes, Pogany, and Penfield in particular requires a finding upholding the election result. Therefore, we affirm the judgment of the court of common pleas denying the election contest.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

*Donald J. McTigue*, for appellant and cross-appellee.

*Michael E. Murman*, for appellee and cross-appellant.

_____