MASCHARI, Contestor,

v.

TONE et al., Contestees.

[Cite as *Maschari v. Tone,* 157 Ohio App.3d 366, 2004-Ohio-2876.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–04–019.

Decided June 1, 2004.

Donald J. McTigue, Mark A. McGinnis and Stuart H. Lippe, for contestor.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell, Assistant Prosecuting Attorney, for contestee Erie County Board of Elections.

Tygh M. Tone, pro se.

KNEPPER, Judge.

{¶ 1} This matter comes before this court on a motion for summary judgment and/or motion for judgment on the pleadings filed by contestee Erie County Board of Elections ("board"). Contestor, Ann B. Maschari, has filed a response in opposition to the board's motion.

{¶ 2} The relevant facts in this case are as follows. On March 2, 2004, a primary election was held in Erie County. The two candidates for the Democratic nomination for the office of judge of the Common Pleas Court of Erie County were contestor and contestee Tygh M. Tone. On March 26, 2004, the board certified that contestor received 6,118 votes and contestee Tone received 7,022 votes, and declared contestee Tone the winner of the election.

{¶ 3} On April 12, 2004, contestor filed a verified election contest petition in this court, pursuant to R.C. 3515.08. The petition alleged that, on January 30, 2004, the board voted not to have polling place officials challenge the party affiliation of any voters who asked to vote in the primary election. The petition further alleged that, as a result of the board's decision, more than 1,400 Republicans were allowed to "cross over" and vote in the Democratic primary. The conclusion drawn in the petition is that the board's policy of not challenging cross-over voters violates Ohio election law, "and constitutes a sufficient irregularity to affect the outcome of the election between Contestor and Contestee." The petition further stated that, because the board's actions made the result of the election "uncertain," the results of the election should be "set aside pursuant to R.C. 3515.14."

{¶ 4} On April 19, 2004, the board filed an answer in which it stated, in relevant part, that the petition fails to state a claim upon which relief may be granted because it (1) is based on conduct that is not in violation of Ohio election law; (2) fails to establish that the alleged irregularities would have changed the result of the election; and (3) was untimely filed. On May 3, 2004, the board filed an amended answer, in which it further asserted that contestor's claims are barred by the doctrines of laches and estoppel. On April 20, 2004, contestee Tone filed an answer and a motion to dismiss the petition, in which he asserted that he should be dismissed from this action because he is not capable of granting the relief requested by contestor. On April 23, 2004, contestee Tone filed a motion to withdraw his motion to dismiss, which this court granted on April 27, 2004.

{¶ 5} On May 3, 2004, the board filed the motion herein, in which it essentially asserts that the petition should be dismissed for four reasons: (1) contestee failed to comply with the statutory requirements for contesting an election; (2) this court lacks subject matter jurisdiction because the action was untimely filed; (3)

contestor's claims are barred by estoppel; and (4) the petition fails to state a claim on which relief may be granted.

{¶ 6} Attached to the motion is a memorandum in support, along with portions of the board's record of proceedings on April 24, 1998, and January 30, 2004, and the affidavits of board director Patricia L. Warner, board member J. Ralph Henry, and contestee Tone. Board member Henry stated in their affidavits that on February 16, 2004, they attended an Erie County Republican Women's meeting at which contestor appeared and urged Republican party members to vote for her in the upcoming primary election. Henry further stated in his affidavit that he received campaign literature from contestor urging the same action. Contestee Tone stated in his affidavit that he was personally aware contestor had urged Republicans to vote for her in the Democratic primary. In her affidavit, board director Warner attached an authenticated copy of minutes from the April 24, 1998 board meeting, in which board members initially voted not to challenge voters' party affiliation at primary elections. Also attached to Warner's affidavit was an authenticated copy of the minutes from the board's meeting on January 30, 2004, in which members voted to continue the no-challenge policy.

{¶ 7} On May 10, 2004, contestor filed a response and a memorandum in support. Attached to contestor's memorandum was her own affidavit, in which she stated that, although she urged Republicans to vote for her in the Democratic primary, she had no knowledge until after the election that cross-over voters would not be challenged. Also attached to contestor's memorandum was a copy of an unauthenticated document titled "Statement of Person Challenged as to Party Affiliation."

{¶ 8} Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Initially, the party seeking summary judgment bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 9} The board first alleges in its motion that this action should be dismissed because it was untimely filed. In support thereof, the board argues that the election results were first ascertained and announced on March 2, 2004, the day the primary election was held. The board concludes that since the petition was not filed until April 12, 2004, which is more than 15 days after the election, it was untimely. Contestor responds that the final results of the election

were not certified until March 26, 2004 and, therefore, this action was "clearly filed within the period permitted by the statute."

{¶ 10} R.C. 3515.09 dictates that an election contest "shall be commenced by the filing of a petition * * * within fifteen days after the results of any such nomination or election have been ascertained and announced by the proper authority, or if there is a recount, within ten days after the results of the recount of such nomination or election have been ascertained and announced by the proper authority." R.C. 3513.22(A) states that election officials shall begin to canvass election returns "[n]ot earlier than the eleventh day nor later than the fifteenth day after a primary election * * *" and shall not "determine and declare the results of the elections * * *" until after the canvass of election returns has been completed from all precincts. R.C. 3513.22(C). The declaration shall be made in writing, signed by at least a majority of the board's members, and shall bear the date it was made. It is those same declared results that shall be promptly certified to the secretary of state. Id.

{¶ 11} Upon consideration of the foregoing, this court finds that the phrase "ascertained and announced," as used in R.C. 3515.09, refers to the certification of election results. Ohio election law dictates that certification is not to take place until after the election board completes its canvass of the election returns pursuant to R.C. 3513.22. It is undisputed in this case that the results of the election were certified on March 26, 2004, and the election contest petition was filed 15 days later, on April 12, 2004.[1] Accordingly, the board's argument that the petition should be dismissed as untimely filed is not well taken.

{¶ 12} The board next asserts that it is entitled to summary judgment because its decision not to challenge cross-over voters in the March 2, 2004 primary election did not violate Ohio election law. In support thereof, the board argues that the precinct workers, and not the board, have the discretion to challenge or not challenge voters on the basis of their party affiliation. The board further argues that, even if the cross-over voters should have been challenged, contestor is estopped from asserting that an irregularity occurred in this case, because she urged Republican voters to cross over and vote for her in the Democratic primary election.

{¶ 13} It is well settled that the power of the courts to intervene in election matters is limited. *In re the Election on the Issue of Zoning the Southeasterly Section of Swanton Twp.* (1982), 2 Ohio St.3d 37, 38, 2 OBR 581, 442 N.E.2d 758. The Supreme Court of Ohio has recognized that " '[t]he survival

---

1. Fifteen days from March 26, 2004, was Saturday, April 10. However, pursuant to Civ.R. 6(A), the 15 day filing period did not end until Monday, April 12, 2004.

of our system of government requires that proper respect be given to the will of the people as expressed at the ballot box.' " Id., quoting *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 86, 1 OBR 122, 438 N.E.2d 410. Accordingly, a court will not set aside an election and reject the entire vote of an election district unless one or more irregularities are alleged that "are so great and so flagrant in character as to render it impossible to separate the illegal from the legal votes and raise a doubt as to how the election would have resulted had such irregularities not occurred." *Otworth v. Bays* (1951), 155 Ohio St. 366, 44 O.O. 344, 98 N.E.2d 812, paragraph one of the syllabus. In other words, an election result will not be disturbed unless it is shown to be "contrary to the will of the electorate." *Mehling v. Moorehead* (1938), 133 Ohio St. 395, 408, 11 O.O. 55, 14 N.E.2d 15.

{¶ 14} R.C. 3513.19 provides that primary election officials and certain other individuals have a duty that arises "whenever any such person doubts that another person attempting to vote at a primary election is legally entitled to vote at such election, to challenge the right of that other person to vote." R.C. 3513.19(A). Such doubt may be based on the premise that "the person is not affiliated with or is not a member of the political party whose ballot the person desires to vote. * * *" R.C. 3513.19(A)(3).

{¶ 15} If an election official doubts a voter's party affiliation, such affiliation may then be determined by "examining the elector's voting record for the current year and the immediately preceding two calendar years as shown on the voter's registration card, using the standards of affiliation specified in the seventh paragraph of [R.C. 3513.05]." Id. Pursuant to that statute, a person is "a member of a political party if the elector voted in that party's primary election within the preceding two calendar years, or if the elector did not vote in any other party's primary election within the preceding two calendar years." R.C. 3513.05.

{¶ 16} If the election official's doubt is confirmed and a challenge is brought based on the grounds set forth in R.C. 3513.19(A)(3), the person's membership in or affiliation with a particular political party shall then "be determined by the person's statement, made under penalty of election falsification, that the person desires to be affiliated with and supports the principles of the political party whose primary ballot the person desires to vote." R.C. 3513.19(B). The statement shall be made before election officials under penalty of election falsification. R.C. 3513.20.

{¶ 17} In Ohio, voting in the primary election of a particular political party is indicative of a voter's desire to be affiliated with that party and to support its principles. See *State ex rel. Bible v. Hamilton Cty. Bd. of Elections* (1970), 22 Ohio St.2d 57, 58, 51 O.O.2d 92, 258 N.E.2d 227 ("[W]hen one votes at a primary he necessarily establishes some party affiliation or membership."). The only time

a voter is required to make a statement regarding his desire to change party affiliation is after a challenge has been made. R.C. 3513.19. In that circumstance, R.C. 3513.20 requires the voter to state that he or she "desires to be affiliated with and supports the principles of the political party whose ballot the person desires to vote * * *." [2]

{¶ 18} Contestor argues that, pursuant to R.C. 3513.19, election officials have an absolute duty to challenge all cross-over voters in a primary election, because polling place officials have before them pollbooks that set forth a voter's political party affiliation. Contestor therefore concludes that the board's policy of not challenging cross-over voters is illegal and constitutes an election irregularity that requires this court to declare the results of the March 2, 2004 Democratic primary election void. Contestor's conclusion is flawed, for the following reasons.

{¶ 19} First, election officials, and not the board of elections, have the final authority to challenge a voter's qualifications in a primary election. See *Holding v. Corey* (1936), 54 Ohio App. 34, 35, 7 O.O. 379, 5 N.E.2d 1022 (the Ninth District Court of Appeals, interpreting former G.C.4785–84, which is analogous to R.C. 3513.19 and R.C. 3513.20, held that "precinct officials are given final authority to reject the vote, and the rejection complained of was as to acts done by these [precinct] officials and not by the [board of elections]"). In bringing this action, contestor has challenged only the board's policy and not the conduct of the elections officials.

{¶ 20} Second, both parties are asking this court to determine whether a number of the votes cast on March 2, 2004, were illegal because the qualifications of cross-over voters were not challenged pursuant to R.C. 3513.19. The key issue, then, is whether or not, under Ohio law, election officials have an absolute duty to challenge all cross-over voters in a primary election.

{¶ 21} The overriding concern in cases involving statutory interpretation is the determination of legislative intent. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995. Accordingly, we must first look "to the language in the statute and the purpose to be accomplished." Id., citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319. If we find that the statute's meaning is unambiguous, "it must be applied as written and no further

---

2. We note at this point that the unauthenticated document attached to contestor's memorandum in opposition to summary judgment purports to be an affidavit that is employed when a voter is challenged. However, the affidavit submitted by contestor asks a challenged voter to state only that voter's name, address, and desire to be affiliated with a particular party. In contrast, R.C. 3513.20 requires a challenged voter to state the voter's "name, age, residence, length of residence in the precinct, county, and state * * * *and* * * * all other facts necessary to determine whether he is entitled to vote in such primary election," in addition to a statement of the voter's desired party affiliation. (Emphasis added.) Id.

interpretation is appropriate." Id., citing *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 524–525, 634 N.E.2d 611. It is this court's duty to give effect to the words used in the statute and not to insert words not used. *State ex rel. Carter v. Wilkinson* (1994), 70 Ohio St.3d 65, 66, 637 N.E.2d 1, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150.

{¶ 22} Contestor's interpretation of R.C. 3513.19(A) would require us to remove the phrase "whenever any [election official] doubts that another person attempting to vote at a primary election is legally entitled to vote at such election" and substitute the phrase "whenever a voter's name appears in one party's pollbook and he or she asks for a ballot from another political party in a primary election." If the General Assembly had intended such a scenario, it could have written R.C. 3513.19 to mandate a challenge under the conditions urged by contestor. However, the statutory duty of raising a challenge is conditioned on "whenever" an election official doubts a voter's party affiliation, not "whenever" an official may have or even should have reason to doubt a voter's affiliation. The statutory language therefore gives a measure of discretion to election officials in deciding which voters should be challenged in a primary election.

{¶ 23} Based on our determinations set forth above, we need not reach the issue of whether contestor is estopped by her own actions from contesting the results of the election. However, it is worth noting that contestor actively pursued cross-over voters before the election. Surely she was aware, based on her campaign tactics, that there was a high probability that cross-over voters would play a role in the March 2, 2004 primary election. Yet, by her own admission, she failed to educate herself as to the necessity of challenging those cross-over voters, and she did not take all available statutory steps to insure the integrity of the election. Those steps could have included asking the Democratic party to appoint a challenger to each precinct pursuant to R.C. 3505.21.[3]

{¶ 24} This court has reviewed the entire record in this case and, upon consideration thereof and the law, finds that the duty to challenge cross-over voters pursuant to R.C. 3513.19 arises only if election officials, who have both discretion in bringing challenges and final authority to decide a voter's qualifications, doubt a person's qualifications to vote in a particular party's primary election. Accordingly, the board's no-challenge policy was not binding on the election officials, and it therefore does not constitute the type of irregularity that

---

3. R.C. 3505.21 provides that, at a primary election, "any political party supporting candidates to be voted upon at such election * * * may appoint to any of the polling places in the county * * * one person, a qualified elector, who shall serve as challenger for such party * * * during the casting of the ballots * * *."

would justify thwarting the will of the voting public by voiding the results of the March 2, 2004 primary election.

{¶ 25} On consideration whereof, this court further finds that there exist no other genuine issues of material fact and, after construing the evidence most strongly in favor of contestor, the board is entitled to summary judgment as a matter of law. The results of the March 2, 2004 primary are affirmed, and the election contest petition is hereby dismissed. Pursuant to R.C. 3515.09, the costs of these proceedings assessed to contestor.

Petition dismissed.

PETER M. HANDWORK, P.J., and ARLENE SINGER, J., concur.