MASCHARI, APPELLANT, v. TONE ET AL., APPELLEES.

[Cite as *Maschari v. Tone,* 103 Ohio St.3d 411, 2004-Ohio-5342.]

(No. 2004–0977—Submitted September 28, 2004—Decided October 5, 2004.)

**Per Curiam.**

{¶ 1} On April 24, 1998, appellee Erie County Board of Elections voted not to challenge voters concerning their party affiliation at primary elections. On January 30, 2004, the board of elections defeated a motion to rescind the April 24, 1998 action.

{¶ 2} On March 2, 2004, Erie County held a Democratic Party primary election to nominate a candidate for the office of Judge of the Erie County Common Pleas Court for the term commencing January 1, 2005. Appellant, Ann B. Maschari, the incumbent common pleas court judge, and appellee Tygh Mathew Tone were the two candidates for the nomination. On March 26, 2004, the board certified that Tone had defeated Maschari. Tone received 7,022 votes, and Maschari received 6,118 votes. There are no Republican Party candidates for common pleas court judge.

{¶ 3} On April 9, 2004, Maschari filed an election contest under R.C. 3515.08 in the Erie County Court of Appeals to challenge Tone's nomination as the Democratic Party candidate for common pleas court judge. Maschari alleged that at the primary election, more than 1,400 registered Republican Party voters cast votes in the Democratic Party primary election. Maschari claimed that the policy and practice of the board of elections not to challenge voters' political affiliation in primary elections constituted an irregularity that affected the outcome or made uncertain the result of the primary election. Maschari requested that the court of appeals either declare her the winner of the primary election or set aside the election.

{¶ 4} Tone and the board of elections answered Maschari's complaint. In its amended answer, the board of elections raised several defenses, including waiver and estoppel.

{¶ 5} In May 2004, the board of elections moved for summary judgment or judgment on the pleadings. Affidavits filed in support of the board's motion established that Maschari directly solicited and encouraged Republicans to vote for her in the March 2, 2004 Democratic Party primary election. Maschari did not advise voters that if a Republican voted in the Democratic Party primary election, poll workers would challenge their party affiliation.

{¶ 6} Maschari filed a memorandum opposing the board's motion and attached her affidavit in support of her argument. Maschari denied that she had ever encouraged the board of elections or any poll worker to permit registered Republicans to vote in the Democratic primary without being challenged about party affiliation. Maschari further stated that she was unaware, until after the March 2, 2004 primary election, of the board's policy preventing poll workers from challenging voters based on party affiliation.

{¶ 7} On June 1, 2004, the court of appeals entered summary judgment in favor of Tone and the board of elections, denied Maschari's election contest, and affirmed the results of the March 2, 2004 primary election. The court of appeals determined that the board's policy did not constitute an election irregularity:

{¶ 8} "This court has reviewed the entire record in this case and, upon consideration thereof and the law, finds that the duty to challenge cross-over voters pursuant to R.C. 3513.19 arises only if election officials, who have both discretion in bringing challenges and final authority to decide a voter's qualifications, doubt a person's qualifications to vote in a particular party's primary election. Accordingly, the board's no-challenge policy was not binding on the election officials, and it therefore does not constitute the type of irregularity that would justify thwarting the will of the voting public by voiding the results of the March 2, 2004 primary election." 157 Ohio App.3d 366, 2004-Ohio-2876, 811 N.E.2d 555, ¶ 24. The Sandusky branch of the National Association for the Advancement of Colored People and Concerned Voters for Proper Elections filed amicus curiae briefs in support of Maschari and urging reversal of the judgment of the court of appeals.

{¶ 9} This cause is now before the court upon Maschari's appeal as of right.

### Jurisdiction: R.C. 3515.09

{¶ 10} The board asserts that we need not address Maschari's claims on appeal because the court of appeals lacked jurisdiction to consider her election contest. The board asserts that Maschari did not file her election-contest petition "within fifteen days after the results of any such nomination or election have been ascertained and announced by the proper authority," as required by R.C. 3515.09. Because "election contests are special in nature, the procedure prescribed by statute, to invoke a court's jurisdiction to hear such an action, must be strictly

followed." *Hitt v. Tressler* (1983), 4 Ohio St.3d 174, 175, 4 OBR 453, 447 N.E.2d 1299.

{¶ 11} The board claims that because the unofficial results of the March 2, 2004 primary election were first ascertained and announced on March 2, 2004, Maschari's April 9, 2004 petition was filed more than 15 days after that date, in violation of R.C. 3515.09. Maschari counters that under R.C. 3513.22, the official results of the primary election were not ascertained and announced until March 26, 2004, making her petition timely filed under R.C. 3515.09.

{¶ 12} In analyzing R.C. 3515.09, "[w]ords and phrases used shall be read in context and construed according to the rules of grammar and common usage." *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 231, 736 N.E.2d 886. "Ascertain" means "to make (a person) certain, sure, or confident," and "announce" means to "make known officially or publicly." Webster's Third New International Dictionary (1986) 126 and 87.

{¶ 13} Under R.C. 3513.22, an election result is neither certain nor official until the board of elections completes its canvass of election returns within the date set by the Secretary of State and the board determines and declares the results and certifies abstracts of those results.

{¶ 14} Therefore, the court of appeals correctly held that the phrase "ascertained and announced," as used in R.C. 3515.09, refers to the certification of election results in R.C. 3513.22, which did not take place here until March 26, 2004. 157 Ohio App.3d 366, 2004-Ohio-2876, 811 N.E.2d 555, ¶ 11. Consequently, Maschari's petition was timely filed, and the court of appeals had jurisdiction to consider her election contest. Maschari's claims are next considered.

## Summary Judgment

{¶ 15} Maschari first contends that the court of appeals erred in deciding her election contest by summary judgment instead of a trial on the merits.

{¶ 16} We need not address the merits of Maschari's contention for two reasons: (1) Maschari expressly agreed to the summary judgment procedure, and (2) she waived any error by failing to first raise in the court of appeals the objection she raises here. See *State ex rel. Ross v. State*, 102 Ohio St.3d 73, 2004-Ohio-1827, 806 N.E.2d 553, ¶ 7. In the court of appeals' April 23, 2004 entry, the court noted that the schedule of proceedings in the election contest, including the time for filing a summary judgment motion and a response to that motion, was "pursuant to the agreement of the parties."

## Discovery

{¶ 17} Maschari next claims that the court of appeals erred in denying her the opportunity to conduct discovery in the election contest. Although the court of

appeals first denied the board's motion for a protective order to prevent Maschari from deposing board members, the court later granted motions for protective orders to prevent Maschari from deposing board members and from deposing electors about their votes in the contested election pending the court's consideration of summary judgment.

{¶ 18} "The standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 31. "Abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable attitude. *State ex rel. Hamilton Cty. Bd. of Commrs. v. State Emp. Relations Bd.,* 102 Ohio St.3d 344, 2004-Ohio-3122, 810 N.E.2d 949, ¶ 17.

{¶ 19} After the deadline for filing a response to the board's motion for summary judgment passed, the court of appeals granted the board's motions for protective orders pending its resolution of the board's summary judgment motion. In essence, the court of appeals concluded that if summary judgment was granted, it would render moot the need for further discovery.

{¶ 20} The court of appeals did not act in an unreasonable, arbitrary, or unconscionable manner in so concluding. Although Maschari contends that some of her requested discovery could have resulted in evidence to rebut the board's summary judgment motion, she did not argue this in her motion for reconsideration of the decision granting a protective order, where she merely claimed that the discovery was "to prepare for the June 2, 2004 trial." In fact, the depositions for which the court of appeals granted protective orders were for depositions scheduled by Maschari *after* the May 10, 2004 deadline she had agreed to for the filing of her response to the board's summary judgment motion. Maschari never moved pursuant to Civ.R. 56(F) to delay the court's consideration of the summary judgment motion pending further discovery. See *Taylor v. Franklin Blvd. Nursing Home, Inc.* (1996), 112 Ohio App.3d 27, 30, 677 N.E.2d 1212 ("a party who fails to seek relief under Civ.R. 56[F] in the trial court does not preserve its rights thereto for purposes of appeal").

## No–Challenge Policy

{¶ 21} Maschari asserts that the court of appeals erred in denying her election contest of the May 2, 2004 primary election. In order to ultimately prevail, Maschari had to establish by clear and convincing evidence that one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the primary election. *In re Election Contest of Dec. 14, 1999 Special Election for the Office of Mayor of Willoughby Hills* (2001), 91 Ohio St.3d 302, 305, 744 N.E.2d 745.

{¶ 22} Maschari contends that the board of elections' policy not to challenge a voter's party affiliation in primary elections constituted an irregularity. R.C. 3513.19(A) imposes a duty on any judge of elections to challenge the right of a person to vote whenever the judge doubts that the person is legally entitled to vote:

{¶ 23} "It is the duty of any *witness* or *challenger* and of any *judge* of elections and the right of any *elector*, whenever any such person doubts that another person attempting to vote at a primary election is legally entitled to vote at such election, to challenge the right of that other person to vote." (Emphasis added.)

{¶ 24} The statute places on three categories of persons a duty to challenge the right of a person to vote and further provides any elector with a right to challenge the right of a person to vote. Election judges are merely one category of persons with a duty to challenge the right of a person to vote.

{¶ 25} One of the permissible grounds upon which the right of a person to vote at a primary election may be challenged is that "the person is not affiliated with or is not a member of the political party whose ballot the person desires to vote. Such party affiliation shall be determined by examining the elector's voting record for the current year and the immediately preceding two calendar years as shown on the voter's registration card, using the standards of affiliation specified in the seventh paragraph of section 3513.05 of the Revised Code." R.C. 3513.19(A)(3). The seventh paragraph of R.C. 3513.05 provides that "an elector is considered to be a member of a political party if the elector voted in that party's primary election within the preceding two calendar years, or if the elector did not vote in any other party's primary election within the preceding two calendar years."

{¶ 26} If challenged on the basis of party affiliation, the person may still vote in the primary election by making a statement "under penalty of election falsification, that the person desires to be affiliated with and supports the principles of the political party whose primary ballot the person desires to vote." R.C. 3513.19(B) and 3513.20. If the challenged person does not make this statement, the person will be refused a ballot. R.C. 3513.20.

{¶ 27} The board's no-challenge policy improperly divested election officials of their statutory authority and responsibility under R.C. 3513.19(A) to challenge a person's right to vote based on party affiliation.

{¶ 28} The court of appeals determined, however, that the board's policy did not constitute an irregularity sufficient to withstand the board's summary judgment motion because the policy "was not binding on the election officials." In so holding, the court of appeals relied on *Holding v. Corey* (1936), 54 Ohio App. 34, 35, 5 N.E.2d 1022, in which an appellate court interpreted a previous statutory challenge provision and held that a board of elections was not liable for damages

for instructing precinct officials to prevent persons affiliated with one party from voting in another party's primary because precinct officials "were not bound to follow the [board's] advice."

{¶ 29} The court of appeals erred in so concluding. The pertinent statutes place the responsibility on *boards of elections* to appoint precinct election officials, R.C. 3501.22(A), train them, 3501.27(A) and (B), and remove them for cause, 3501.22(A). Under R.C. 3501.11(E), the boards of elections must "[m]ake and issue rules and instructions, *not inconsistent with law* or the rules, directives, or advisories issued by the secretary of state, as it considers necessary for the guidance of election officers and voters." (Emphasis added.) And R.C. 3501.31 requires precinct election officials to take an oath to discharge their duties "as required by law and *the rules and instructions of the board of elections of said county.*" (Emphasis added.) Therefore, persons acting as election officials appointed by the board could reasonably believe that they had a duty to follow the board's instructions, including the no-challenge policy, even if—as here—that policy was inconsistent with the applicable statutes.

{¶ 30} The board's policy precluding election officials from exercising their authority under R.C. 3513.19(A) potentially changed the essentially closed primary into an unconstitutional open primary. Cf. *California Democratic Party v. Jones* (2000), 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502, where the Supreme Court of the United States held that California's blanket-primary system, which permitted electors to vote for any candidate regardless of the voter's or candidate's party affiliation, was unconstitutional because it violated political parties' First Amendment right of association.

{¶ 31} Consequently, the court of appeals erred in holding that the board's no-challenge policy did not constitute an election irregularity.

### Estoppel

{¶ 32} Nevertheless, any error by the court of appeals in determining that the no-challenge policy was not an irregularity does not warrant reversal of the court's denial of Maschari's election contest. " 'Reviewing courts are not authorized to reverse a correct judgment on the basis that some or all of the lower court's reasons are erroneous.' " *Jackson v. Wilson,* 100 Ohio St.3d 315, 2003-Ohio-6112, 798 N.E.2d 1086, ¶ 10, quoting *State ex rel. McGrath v. Ohio Adult Parole Auth.,* 100 Ohio St.3d 72, 2003-Ohio-5062, 796 N.E.2d 526, ¶ 8.

{¶ 33} Maschari was estopped from contesting the primary election result. "In cases in which we have found equitable estoppel in an election contest, irregularities were plain on the face of the ballot, and the contestors were aware of the alleged defects prior to the election." *In re Contested Election of Nov. 2, 1993* (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859; *In re Election of Nov. 6, 1990 for*

*the Office of Attorney General of Ohio* (1991), 58 Ohio St.3d 103, 113–114, 569 N.E.2d 447. In *Contested Election of Nov. 2, 1993,* 72 Ohio St.3d at 414, 650 N.E.2d 859, we held that contestors were estopped from raising a defective-ballot-language claim because they "were either aware of or should have been aware of the ballot language prior to the November 2, 1993 election, yet they failed to raise this issue prior to learning of the adverse election results."

{¶ 34} Similarly, although the claimed irregularity was not "plain on the face of the ballot," Maschari should have been aware of the board of elections' no-challenge policy, which had been effective since April 1998 and had survived a rescission motion in January 2004. The board's policy was promulgated and reaffirmed at regular board meetings that were open to the public. But Maschari failed to contest the policy until following the March 2004 primary election results, and in fact, she actively solicited Republicans to vote for her in the primary election. Cf. *Shipan v. Slivka* (Jan. 22, 1982), Cuyahoga App. No. 44779, 1982 WL 2309 ("Contestor made no objection to the Board of Elections about any procedures used by it to count any ballots * * * until after the Board had completed the official count and the subsequent requested recount. By his conduct during the count and recount, Contestor manifested an acquiescence in the procedures used by the Board of Elections to accomplish the ballot evaluation and tabulation").

{¶ 35} As the court of appeals noted, "[s]urely [Maschari] was aware, based on her campaign tactics, that there was a high probability that cross-over voters would play a role in the March 2, 2004 primary election. Yet, by her own admission, she failed to educate herself as to the necessity of challenging those cross-over voters * * *. [Maschari] could have * * * ask[ed] the Democratic party to appoint a challenger to each precinct pursuant to R.C. 3505.21."

{¶ 36} Under these circumstances, Maschari is not entitled to pursue Republican voters and then complain about the lack of challenges to those same voters by election officials after she loses. She should have been aware of the board's publicly adopted no-challenge policy and could have acted under R.C. 3505.21 to have challengers present in each precinct. These facts do not establish "extreme circumstances" manifestly affecting the "integrity of the election." *In re Election Contest of Dec. 14, 1999 Special Election,* 91 Ohio St.3d at 308, 744 N.E.2d 745.

{¶ 37} The court of appeals properly denied Maschari's election contest. " 'Our holding is in accordance with the tendency of this court to insist * * * that after an election, unless is it shown that the result was contrary to the will of the electorate, it will not be disturbed.' " Id., 91 Ohio St.3d at 308, 744 N.E.2d 745, quoting *Mehling v. Moorehead* (1938), 133 Ohio St. 395, 408, 11 O.O. 55, 14 N.E.2d 15.

{¶ 38} Our holding is restricted to the unique facts present in this case.

{¶ 39} Based on the foregoing, we affirm the judgment of the court of appeals.

Judgment affirmed.

Moyer, C.J., F.E. Sweeney, Lundberg Stratton and O'Connor, JJ., concur.

Pfeifer and O'Donnell, JJ., dissent.

Resnick, J., not participating.

---

**Pfeifer, J., dissenting.**

{¶ 40} I dissent. From a procedural standpoint, I am persuaded that genuine issues of material fact remain concerning Maschari's election contest. Moreover, the pertinent statutes governing election contests require a trial rather than a summary judgment proceeding. See, e.g., R.C. 3515.10 ("The court with which a petition to contest an election is filed shall fix a suitable time for hearing such contest"); 3515.11 ("The proceedings at the trial of the contest of an election shall be similar to those in judicial proceedings, in so far as practicable"); 3515.14 ("Upon completion of the trial of a contest of election, the court shall pronounce judgment * * *"). Consequently, summary judgment was not warranted.

{¶ 41} Further, the policy of the Erie County Board of Elections was flatly illegal and may well have significantly affected this race. Whether Maschari encouraged Republicans to vote for her is irrelevant. As the majority explains, a heretofore Republican may vote in a Democratic primary by making a statement "under penalty of election falsification, that the person desires to be affiliated with and supports the principles of the political party whose primary ballot the person desires to vote." R.C. 3513.19(B) and 3513.20. Thus, Maschari was well within her rights to seek the possible vote of Republicans. In a small town, party affiliations may be held not as dear as having the opportunity to vote for a friend.

{¶ 42} Maschari's solicitation of certain Republicans does not mean, however, that she was privy to the policies of the Erie County Board of Elections. Should candidates, including statewide candidates, be responsible for uncovering malfeasance at local boards of elections? That is clearly the duty of the Ohio Secretary of State, who must uncover and correct the illegal actions of local boards well in advance of elections.

{¶ 43} As the majority recognizes, it is " 'the tendency of this court to insist * * * that after an election, unless is it shown that the result was contrary to the will of the electorate, it will not be disturbed.' " *In re Election Contest of Dec. 14, 1999 Special Election for the Office of Mayor of Willoughby Hills* (2001), 91 Ohio St.3d 302, 308, 744 N.E.2d 745, quoting *Mehling v. Moorehead* (1938), 133 Ohio

St. 395, 408, 11 O.O. 55, 14 N.E.2d 15. We must note that the election in this case was a Democratic primary and that Democrats are the electorate to consider. If the improper crossing over was significant, it is likely that the result was contrary to the will of that electorate.

{¶ 44} Therefore, the judgment of the court of appeals should be reversed and the cause remanded for further proceedings, including an evidentiary hearing on the election contest.

O'DONNELL, J., concurs in the foregoing dissenting opinion.

---

**O'DONNELL, J., dissenting.**

{¶ 45} I respectfully dissent.

{¶ 46} Here, the majority has reviewed R.C. 3513.19(A)(3) and correctly concluded that it is the duty of a judge of elections to challenge the right of a person to vote whenever that judge doubts the other person's right to vote. Because that was not done in this election in Erie County, I agree with the majority that the no-challenge policy constituted an election irregularity.

{¶ 47} Nowhere in the statute, however, does it suggest that if a candidate solicited members of an opposite party to vote in a closed primary, the election judge's duty would be abrogated. Further, I am unpersuaded that because the candidate did solicit Republicans to vote for her in the primary election, she is somehow estopped from complaining about the no-challenge policy. No evidence exists that all Republicans would have been precluded from voting in the closed primary. Some may have been able to pass a challenge of the election judge had there been one. The majority fails to account for this realistic possibility.

{¶ 48} And moreover, the majority's claim that its holding is in accord with the tendency not to disturb an election result unless the result is shown to be contrary to the will of the electorate is not borne out by today's analysis. The election result here became skewed by unchallenged electors voting in a closed primary—how can that result be the will of the electorate? It shows the will of those who should have had no influence over the outcome of the election!

{¶ 49} I would reverse the judgment of the court of appeals and order a remand for further proceedings as outlined in Justice Pfeifer's dissenting opinion, with which I concur.

PFEIFER, J., concurs in the foregoing dissenting opinion.

---

Law Offices of Donald J. McTigue, Donald J. McTigue and Mark A. McGinnis, for appellant.

Tone, Grubbe, McGory & Vermeeren, and Tygh M. Tone, for appellee Tygh M. Tone.

Julia R. Bates, Special Erie County Prosecuting Attorney, and John A. Borell, Special Assistant Prosecuting Attorney, for appellee Erie County Board of Elections.

Stuart Lippe, urging reversal for amici curiae, Sandusky Branch of the National Association for the Advancement of Colored People and Concerned Voters for Proper Elections.