HARMON, APPELLANT, *v.* BALDWIN ET AL., APPELLEES.

[Cite as *Harmon v. Baldwin,* 107 Ohio St.3d 232, 2005-Ohio-6264.]

(No. 2005–0452—Submitted August 23, 2005—Decided December 14, 2005.)

---

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying an election contest.

{¶ 2} A general election was held on November 2, 2004, in Licking County, Ohio, to elect a candidate to the office of judge of the Licking County Court of Common Pleas, Domestic Relations Division, for the term commencing on January 1, 2005. The candidates included appellant, Paul D. Harmon, appellee Craig Baldwin, and three other persons.

{¶ 3} On November 22, 2004, appellee Licking County Board of Elections certified that Baldwin had received the highest number of votes among the five candidates—14,409—and that Harmon had received the second highest vote total—14,198. Because the margin of victory was so small, R.C. 3515.011 required a recount. See R.C. 3515.011 ("If the number of votes cast in any county or municipal election for the declared winning * * * candidate * * * does not exceed the number of votes cast for the declared defeated * * * candidate * * * by a margin of one-half of one per cent or more of the total vote, the appropriate board of elections shall order a recount which shall be conducted as provided in sections 3515.04 and 3515.05 of the Revised Code").

{¶ 4} The board conducted the recount, and on December 8, 2004, it declared that Baldwin had beaten Harmon by a margin of 214 votes—14,413 to 14,199.

{¶ 5} On December 15, 2004, Harmon filed a petition in the Court of Appeals for Licking County pursuant to R.C. 3515.08 et seq. contesting the election. In his petition, Harmon alleged the following irregularities: (1) ballot-rotation errors, (2) the board's denial to him of the opportunity to examine ballot pages during the recount, and (3) significant undervotes and unexpectedly high votes for some candidates in some precincts. Harmon claimed that the number of votes affected by these irregularities was sufficient to either change or make uncertain the election result.

{¶ 6} Harmon requested that the court of appeals set a hearing not more than 30 days thereafter, as required by R.C. 3515.10. Consistent with Harmon's request, the court of appeals set a hearing for January 12, 2005. Baldwin and the board answered the petition.

{¶ 7} Upon the joint motion of Harmon and the board to adjourn the hearing, the court of appeals rescheduled the hearing for February 8 and 9. The court of appeals also issued an agreed order permitting the parties to "inspect the ballot

pages and test the voting devices used at the polling places in Licking County at the November 2, 2004 general election." The inspection was to begin on January 18.

{¶ 8} During his opening statement at the beginning of the February 8 hearing on the election contest, Harmon claimed numerous irregularities, including many that were not alleged in his petition. When Baldwin objected to these new allegations, the court of appeals ruled that the evidence would be confined to Harmon's allegations in his election-contest petition. Harmon later moved to amend his petition to "include all of the many irregularities * * * included in [the] opening statement." Harmon argued that the amendment should be allowed because his previous legal counsel, whom he had dismissed before trial, had drafted the petition, and there would be no surprise to Baldwin or the board of elections by allowing the amendment. Harmon then proffered evidence that he had received from the Secretary of State's office concerning the number of Votomatics [1] used by the board for the November 2, 2004 election.

{¶ 9} The court of appeals denied the motion for leave to amend based on the statutory timetable for election contests:

{¶ 10} "We believe we have to stay very close to the timetable and therefore a leave to amend would * * * cause a need for a continuance in order to fully defend against this and therefore we will deny it."

{¶ 11} On February 11, Harmon moved for an order to compel Mary Jo Long, the former director of the board of elections, to appear at the hearing and testify. On that same date, Harmon moved the court to reconsider his request to allow an amendment of the petition to allege fraud.

{¶ 12} On February 14, the court of appeals conducted the final day of the election-contest proceeding. At the hearing, the court of appeals denied Harmon's motions to compel and amend. The court of appeals also denied Harmon's oral request at the hearing "to have someone look at the votomatics to determine if the machines are full of chads and to what extent that may have contributed to an undervote."

{¶ 13} On February 17, the court of appeals denied Harmon's contest. The court of appeals found "no clear and convincing evidence of any election irregularity."

{¶ 14} This cause is now before the court upon Harmon's appeal as of right under R.C. 3515.15.

---

1. Votomatics are voting machines in which a frame and attached pages are placed. A voter places a punch card in the Votomatic and uses a stylus to punch out a chad next to the name of the candidate the voter chooses.

Procedural Rulings: Standard of Review

{¶ 15} Harmon asserts that the court of appeals erred in several of its procedural rulings. He contends that the court of appeals should not have denied his motions for leave to amend his petition, to continue the case to permit further investigation of chads in the voting machines, and to compel the board's former director to testify.

{¶ 16} The court of appeals—acting as a trial court in Harmon's election contest—had discretion to rule upon these motions, and the court's rulings will not be reversed absent an abuse of that discretion. See, e.g., *State ex rel. Askew v. Goldhart* (1996), 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (leave to amend a pleading); *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 44 (continuance); *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 31 (discovery matters); *Ohio Motor Vehicle Dealers Bd. v. Remlinger* (1983), 8 Ohio St.3d 26, 27, 8 OBR 337, 457 N.E.2d 309 (order to compel testimony). " 'Abuse of discretion' connotes an unreasonable, arbitrary, or unconscionable attitude." *Maschari v. Tone*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 18.

{¶ 17} With this standard governing our review of the court of appeals' rulings on Harmon's motions, we now consider these decisions.

Leave to Amend

{¶ 18} At trial, Harmon attempted to raise many claims of election irregularities that were not contained in his petition. Harmon's petition thus failed to fully comply with R.C. 3515.09, which requires that an election-contest petition "set forth the grounds for such contest." See, also, *In re Election Contest of Democratic Primary Election Held May 4, 1999 for Nomination to the Office of Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 264, 725 N.E.2d 271. Under R.C. 3515.11, however, the court of appeals was vested "with power to order or permit amendments." See, also, id.

{¶ 19} For the following reasons, the court of appeals did not abuse its discretion under R.C. 3515.11 by denying Harmon's motion for leave to amend. First, Harmon lacked a justifiable excuse for not raising most of these claims earlier. His specified justification at trial was simply that he had dismissed the attorney who had filed the petition. Because he had the opportunity to raise these claims earlier but did not do so, Harmon failed to exercise the promptness and utmost diligence normally required of persons instituting election cases. *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 21. Second, election contests must be heard within a specified period of time, and this requirement is jurisdictional. *Helms v. Green*, 102 Ohio St.3d 295, 2004-Ohio-2951, 809 N.E.2d 1141, ¶ 6–7; R.C. 3515.10. If the

court had granted Harmon's motion, it would have extended the trial so that appellees could properly defend against these newly pleaded claims. Third, although the court of appeals denied the motion to amend, it ultimately did decide the merits of Harmon's main additional claim, i.e., the alleged discrepancy between the parties' figures on the number of Votomatics used at the election.

{¶ 20} Consequently, the court of appeals properly denied Harmon's motion to amend his petition.

### Continuance

{¶ 21} On the final day of the hearing, the court of appeals denied Harmon's request for a continuance to permit further investigation of chads in the voting machines. "In evaluating a motion for a continuance, '[s]everal factors can be considered: the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors.'" *Ahmed,* 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 44, quoting *State v. Landrum* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710.

{¶ 22} Given the time constraints involved in election contests, the delay sought could be considered lengthy. Harmon and appellees had already received a 27–day continuance of the original hearing date. Further, Harmon waited nearly a month after he began examining the voting machines and discovered the alleged problem with chads and until the third and final day of the hearing to request a continuance. Finally, there was evidence that there was no problem with chads jamming the voting machines on election day.

{¶ 23} Based on the foregoing, the court of appeals did not abuse its discretion by denying Harmon's request for a continuance.

### Motion to Compel

{¶ 24} The court of appeals denied Harmon's motion to compel the testimony of the former director of the board of elections because he did not establish that he ever served her with a subpoena. Under Civ.R. 45(B), "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy of the subpoena to the person, by reading it to him or her in person, or by leaving it at the person's usual place of residence, and by tendering to the person upon demand the fees for one day's attendance and the mileage allowed by law." The exhibit concerning the subpoena did not indicate that the former director was served in person. And although a copy of the subpoena was left at an Ohio residence, no evidence established that the former director still resided at that residence or anywhere else in Ohio at that time.

{¶ 25} Harmon argues that the court of appeals should nevertheless have compelled the former director to testify under R.C. 3599.37. That statute is

inapposite. R.C. 3599.37 merely states that a person "having been subpoenaed or ordered to appear" to testify regarding a violation of election laws but failing to do so is guilty of a misdemeanor. Further, as noted previously, the former director was never properly subpoenaed or ordered to testify.

{¶ 26} Therefore, the court of appeals did not abuse its discretion by denying the motion to compel.

### Substantive Claims: Election Contest

{¶ 27} Regarding the alleged election irregularities that Harmon either properly pleaded or that the court of appeals considered, Harmon had to establish that "one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the * * * election." *Maschari*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 21. Harmon had to establish these factors by clear and convincing evidence. Id.

### Ballot–Rotation Problems

{¶ 28} Although alleged ballot-rotation irregularities were the primary focus of Harmon's election-contest petition, he ultimately relied upon only two incidents. The first involved a Votomatic in the Madison C precinct that had an improper rotation page. Testimony established, however, that any irregularity did not affect enough votes to change or make uncertain the election result.

{¶ 29} The second claimed error involved the mislabeling of Votomatics in Hartford Village and Hartford Township. But Harmon eventually stipulated that the problem was corrected and that the votes for the village and township were cast properly.

### Undervotes and Anomalous Vote Totals

{¶ 30} In his petition, Harmon claimed that undervotes and anomalously high votes for some candidates in certain precincts "may be the result of rotation errors in the ballot pages." An undervote occurs when a vote is not cast in a race, e.g., the domestic-relations-judge race. The voter's intent in an undervote could reasonably be determined as being not to vote in the particular race at issue while voting in other races, e.g., the presidential race.

{¶ 31} We agree with the court of appeals that Harmon failed to establish that the undervotes and the supposedly anomalously high votes constitute election irregularities or that they had any effect on the election result.

### Recount Process: Ballot Examination

{¶ 32} Harmon alleged in his petition that during the recount, he was denied the right to examine the ballots. His claimed purpose in wanting to examine the

ballots "was to verify proper rotation of the candidates' names from precinct to precinct as required under Ohio law."

{¶ 33} R.C. 3515.04 governs the procedure for recounts and specifies that "[w]itnesses shall be permitted to see the ballots, but they shall not be permitted to touch them." Harmon presented testimony that he and his witnesses were not allowed to see the ballot page assemblies and were not afforded a full opportunity to see the ballots, often because officials swept the ballots by at an excessive speed.

{¶ 34} Nevertheless, the record is devoid of any evidence, much less evidence of a clear and convincing nature, that the board's failure to comply with R.C. 3515.04 had any impact whatsoever on the number of votes for the candidates or the election. In fact, Harmon's stated purpose in examining the ballots was to verify proper ballot rotation, but he specified only two potential ballot-rotation problems, neither of which satisfies his burden of proof for his election contest. Nor did Harmon attempt to invoke the recount procedure in R.C. 3515.13.[2]

Recount Process: Electronic Count and Absentee Ballots

{¶ 35} Although Harmon did not raise these issues in his petition, the court of appeals considered his claims questioning the propriety of the board's electronic recount and the board's opening of absentee ballots before election day.

{¶ 36} Harmon claims that the board of elections failed to follow the recount procedure because when its machine count did not comport with the hand count of the sample of three percent of the total ballots, the board should have ordered a hand count of all the ballots instead of running the machine twice more until the counts matched. Even assuming, however, that the board's procedure violated the recount procedures promulgated by the Secretary of State, see R.C. 3501.05(B) and (C), Harmon again failed to establish any effect on the final vote.

{¶ 37} Harmon further asserts that the board erred by opening the absentee ballots two weekends before election day. R.C. 3509.06 provides only that the count of absentee ballots may not be disclosed before the closing of the polling places. The board did begin processing absentee ballots before election day, but ballots were not counted prior to that day. And as the court of appeals concluded, even if the premature ballot opening constituted error, "we find no evidence to suggest it violated the sanctity of voter privacy or that any voter irregularity affected the outcome of the election."

---

2. R.C. 3515.13 provides: "If any contest of election involves a recount of the ballots in any precincts, the court shall immediately order the ballots of the precincts in which the recount is demanded to be sent to the court in such manner as the court designates, and such court may appoint two master commissioners of opposite political parties to supervise the making of the recount."

Number of Votomatics

{¶ 38} The court of appeals also considered Harmon's unpleaded claim concerning the board's assertion that 740 Votomatics—and 745 frames—were used in the election, which conflicted with information provided by the former director of the board of elections to the Secretary of State that 760 Votomatics were deployed in Licking County for the election. Harmon argues that this discrepancy is an irregularity that affected the election result.

{¶ 39} But the evidence on the number of voting machines used at the election was conflicting. At trial, Harmon agreed that the exhibit he relied upon to claim that there were 760 Votomatics used may simply prove what the former board director said. The board chairman's testimony supported the board's computation of 740 Votomatics and 745 frames used on election day. We will not substitute our judgment for that of the court of appeals in light of this substantial, conflicting evidence. Cf. *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 20–21 (in election case, court will not substitute its judgment for board of elections if there is conflicting evidence on an issue).

## Conclusion

{¶ 40} Therefore, the court of appeals properly denied Harmon's election contest. Harmon failed to establish by clear and convincing evidence that any election irregularities affected enough votes to change or make uncertain the election result. " 'Our holding is in accordance with the tendency of this court to insist * * * that after an election, unless it is shown that the result was contrary to the will of the electorate, it will not be disturbed.' " *In re Election Contest of Dec. 14, 1999 Special Election* (2001), 91 Ohio St.3d 302, 308, 744 N.E.2d 745, quoting *Mehling v. Moorehead* (1938), 133 Ohio St. 395, 408, 11 O.O. 55, 14 N.E.2d 15. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

Paul D. Harmon, pro se.

Schaller, Campbell & Untied and David Q. Wigginton, for appellee Craig Baldwin.

240

Robert L. Becker, Licking County Prosecuting Attorney, and Anthony W. Stocco, Assistant Prosecuting Attorney, for appellee Licking County Board of Elections.