TAFT, APPELLEE, *v.* CUYAHOGA COUNTY BOARD OF ELECTIONS
ET AL., APPELLEES; BAIN, APPELLANT.

[Cite as *Taft v. Cuyahoga Cty. Bd. of Elections,*
110 Ohio St.3d 471, 2006-Ohio-4204.]

(No. 2006–0477—Submitted August 8, 2006—Decided August 16, 2006.)

---

**Per Curiam.**

{¶ 1} This is an appeal from a judgment declaring a tie vote in an election contest and certifying the ruling to a board of elections. Because the common pleas court erred by failing to conduct an evidentiary hearing, we reverse the judgment and remand the cause to the common pleas court for further proceedings.

### November 8, 2005 Election

{¶ 2} On November 8, 2005, an election was held for four at-large council seats in the city of Pepper Pike, Ohio. Six candidates ran for the four council seats. On November 30, 2005, appellee Cuyahoga County Board of Elections certified that appellee Frederick I. Taft, an incumbent council member, and appellant, Richard M. Bain, who are both attorneys, had each received 1,124 votes, which resulted in a tie for the fourth council seat. Pursuant to R.C. 3505.33,[1] the chairman of the board of elections flipped a coin to break the tie and declared Taft the winner.

---

1. {¶ a} R.C. 3505.33 provides:

{¶ b} "When the board of elections has completed the canvass of the election returns from the precincts in its county, in which electors were entitled to vote at any general or special election, it shall determine and declare the results of the elections determined by the electors of such county or of a district or subdivision within such county. If more than the number of candidates to be elected to an office received the largest and an equal number of votes, such tie shall be resolved by lot by the chairman of the board in the presence of a majority of the members of the board."

### First Recount

{¶ 3} On December 8, 2005, the board of elections conducted an automatic recount of the council race in all precincts of Pepper Pike pursuant to R.C. 3515.011. R.C. 3515.011 requires an automatic recount by the appropriate board of elections if the margin between the votes for the declared winning candidate and those for the defeated candidate in a municipal election is less than one-half of one percent of the total vote. The board counted all precincts by automatic tabulation equipment, and, in addition, hand-counted the ballots from Precinct H. The hand count and the machine count for Precinct H matched the official canvass results. The recount resulted in Taft's vote total being reduced by one vote and Bain defeating Taft by that single vote. Both Taft and Bain were present to witness the recount. After comparing the original official and recount results, the board found that Taft's vote total had decreased by one in Precinct D.

{¶ 4} On December 12, 2005, the board of elections certified Bain as the winner of the election based upon the recount of the November 8, 2005 election.

### Administrative Investigation

{¶ 5} On December 16, 2005, the board of elections investigated the election by examining all of the ballots cast in Precinct D. Taft and Bain were both present during the ballot examination. The board determined that one of the ballots contained a chad hanging by one corner. See R.C. 3506.16(A)(1) (" 'Chad' means the small piece of paper or cardboard produced from a punch card ballot when a voter pierces a hole in a perforated, designated position on the ballot with a marking device to record a voter's candidate, question, or issue choice"). Pursuant to the county prosecutor's advice, however, the board decided that it could not change the certified election result.

### Election Contest and Second Recount

{¶ 6} On December 21, 2005, Taft filed an election-contest petition in the Cuyahoga County Court of Common Pleas challenging the board's December 12 recount certification of Bain as the winner of the fourth Pepper Pike Council seat. Taft requested that the court order a hand recount of Precinct D in Pepper Pike with all chads hanging by two or fewer corners removed, and further requested that if he received the additional vote in the court-supervised recount, he be declared the winner of the election for the Pepper Pike Council seat, with a four-year term commencing January 1, 2006. Taft claimed that an election irregularity had occurred when the board of elections failed to remove the hanging chad from the questioned ballot from Precinct D and thereby failed to correctly count the votes for that precinct, which resulted in Taft losing the election to Bain by one vote. Taft attached the board's December 19 investigation report to his

verified election-contest petition, and named Bain, the elections board, its director, its chairman, and its board members as contestees.

{¶ 7} On January 10, 2006, the board and its director, chairman, and members answered the petition and filed a motion to dismiss it. Bain submitted an answer and a motion to dismiss the petition for failure to post an adequate bond. The common pleas court denied Bain's dismissal motion.

{¶ 8} Bain also filed a motion for summary judgment, attaching an affidavit and several exhibits. In his affidavit, Bain specified that when he first observed the ballot in question during the board's administrative review of Precinct D, the chad was not attached by fewer than three corners of the ballot, but that the board's handling of the ballot during its investigation altered its condition.

{¶ 9} On February 23, 2006, the common pleas court ordered the board of elections to deliver the ballots from the November 8, 2005 election under seal for a March 1, 2006 recount in the courtroom to be supervised by two master commissioners—one from each political party—appointed by the court. At the March 1, 2006 recount, the master commissioners determined that the pertinent ballot from Precinct D contained a hanging chad detached at three of its four corners and that the ballot should be counted for Taft, resulting in a 1,124 to 1,124 tie between Taft and Bain. When Bain requested an evidentiary hearing, the common pleas court rejected his request and emphasized that it was "not going to have any evidence presented."

{¶ 10} On March 2, 2006, the common pleas court entered a judgment in which it held, "Pursuant to the hand count of Precinct D of the Village of Pepper Pike, Ohio and the report of the Master Commissioners, the court finds that the election resulted in a tie vote and this ruling is thereby certified to the Cuyahoga County Board of Elections to publicly determine by lot which one of the persons should be declared elected." Instead of conducting a new coin flip, the board of elections relied on its chairman's previous coin flip and declared Taft the winner. We denied Bain's emergency motion for an immediate stay of the common pleas court's March 2, 2006 judgment. *Taft v. Cuyahoga Cty. Bd. of Elections*, 108 Ohio St.3d 1500, 2006-Ohio-1275, 844 N.E.2d 354; see, also, R.C. 3515.15 ("The person against whom judgment is rendered in a contest of election may appeal on questions of law, within twenty days, to the supreme court; *but such appeal shall not supersede the execution of the judgment of the court*" [emphasis added]).

{¶ 11} This cause is now before us upon Bain's appeal as of right from the common pleas court's judgment.

{¶ 12} Bain asserts that the common pleas court erred in several particulars in the election contest. These claims are next discussed.

### R.C. 3515.09: Adequate Bond

{¶ 13} Bain asserts that the common pleas court lacked jurisdiction over Taft's election contest because Taft failed to file an adequate bond. R.C. 3515.09 provides that an election-contest petition "shall be accompanied by a bond with surety to be approved by the clerk of the appropriate court in a sum sufficient, as determined by him, to pay all the costs of the contest."

{¶ 14} Taft contacted the Clerk of the Cuyahoga County Court of Common Pleas to determine the bond that he would be required to post to contest the election pursuant to R.C. 3515.09. After a review of past practice, the chief deputy clerk determined that a $100 bond was adequate and in full compliance with the statutory requirements. Taft then completed the following bond form and filed it with his election-contest petition in accordance with instructions from the clerk's office:

{¶ 15} "We bind ourselves to the said Defendant Cuyahoga County Board of Elections in the sum of $100.00 Dollars, that the said Plaintiff Frederick I. Taft shall pay the costs incurred by Frederick Taft by reason of losing this action if it be finally decided that the said action ought not to have been granted."

{¶ 16} Bain claims that because R.C. 3515.09 must be strictly construed, Taft's bond did not comply with the statutory requirement because the bond was a cash bond instead of a surety bond, the bond did not obligate Taft to pay all the costs of the contest, and the bond specified that Taft bound himself only to the board of elections.

{¶ 17} Bain is correct that, in general, "[t]he procedure prescribed by statute to bring an election contest within the jurisdiction of a judge must be strictly followed." *McCall v. E. Local School Dist. Bd. of Edn.* (1959), 169 Ohio St. 50, 8 O.O.2d 11, 157 N.E.2d 351, paragraph one of the syllabus; see, also, *Maschari v. Tone,* 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 10, quoting *Hitt v. Tressler* (1983), 4 Ohio St.3d 174, 175, 4 OBR 453, 447 N.E.2d 1299 ("Because 'election contests are special in nature, the procedure prescribed by statute, to invoke a court's jurisdiction to hear such an action, must be strictly followed' "). If the contestor fails to comply with the bond requirement of R.C. 3515.09, "the court is without jurisdiction to hear or determine the controversy." *In re Contest of Special Election in Village of N. Baltimore* (1940), 136 Ohio St. 279, 16 O.O. 406, 25 N.E.2d 458, paragraph two of the syllabus.

{¶ 18} Nevertheless, we have adopted and applied a substantial-compliance standard for the statutory bond requirement. See, e.g., *McClintock v. Sweitzer* (1941), 138 Ohio St. 324, 325, 20 O.O. 383, 34 N.E.2d 781 ("We hold that there was a substantial compliance with [the statutory bond requirement for election contests], and that no error prejudicial to appellee resulted"); see, also, *Williams v. O'Neill* (1944), 142 Ohio St. 467, 475–476, 27 O.O. 400, 52 N.E.2d 858 (Hart, J.,

dissenting) (substantial compliance, when no prejudice is shown, is sufficient to satisfy bond requirement of election-contest statute); *Hitt*, 4 Ohio St.3d at 175, 4 OBR 453, 447 N.E.2d 1299 ("We disagree with the result reached by the *Williams v. O'Neill* majority and adopt the reasoning set forth in Judge Hart's dissent").

{¶ 19} In applying this test here, Taft's bond, which was approved in form and amount by the clerk of the common pleas court, substantially complied with R.C. 3515.09. The fact that the bond was in cash did not render it defective. See *Monnette v. Malone* (1979), 60 Ohio St.2d 5, 5–6, 14 O.O.3d 2, 395 N.E.2d 493 ($500 cash accepted by clerk's office as bond for court costs complied with R.C. 3515.09). In addition, although the language used by Taft could have been clearer, the bond obligates him to pay "the costs incurred" by him if he loses. Costs incurred by Taft if he loses could reasonably be construed to mean that Taft will pay all costs of the contest ordered by the court if he loses. See, e.g., *Hannah v. Roche* (1941), 138 Ohio St. 449, 454, 20 O.O. 575, 35 N.E.2d 838 (bond stating that "if the said contestors shall pay all the costs of the contest if same be adjudged against them, then this obligation to be void" satisfied statutory bond requirement for election contest because language could be construed to mean that bond was for the payment of all costs of the contest if the contestors lose); see, also, *Williams*, 142 Ohio St. at 475–476, 27 O.O. 400, 52 N.E.2d 858 (Hart, J., dissenting), noting that in *McClintock*, 138 Ohio St. 324, 20 O.O. 383, 34 N.E.2d 781, the court approved a bond in an election contest in which the bond was conditioned "to pay the costs which may be taxed against the plaintiff in such action." Nor would the mere fact that Taft's bond specifies that he bound himself only to the board of elections alter this conclusion, since Taft is willing to pay all costs of the contest, and the clerk approved his cash bond as complying with R.C. 3515.09. There is no allegation or evidence of prejudice to Bain because of the bond posted by Taft and approved by the clerk.

{¶ 20} In this regard, Bain's reliance on *N. Baltimore*, 136 Ohio St. 279, 16 O.O. 406, 25 N.E.2d 458, is misplaced because in that case, there was no evidence that the clerk ever approved the initial submission of cash in lieu of a bond, and subsequent bonds filed by the contestor did not accompany the original petition, as required by statute.

{¶ 21} Based on the foregoing, the common pleas court did not err in denying Bain's motion to dismiss the election-contest petition based upon a failure to comply with the bond requirement of R.C. 3515.09. The court reasonably concluded that Taft had substantially complied with R.C. 3515.09 and that Bain had suffered no prejudice.

### Recount Order—Evidentiary Standard

{¶ 22} Bain next asserts that the court of common pleas erred in ordering a recount of Precinct D as part of the election contest because the court first had to

determine that there was clear and convincing evidence of an election irregularity.

{¶ 23} To be sure, in order to prevail in his election contest, Taft had to establish by clear and convincing evidence that one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the election result. *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, ¶ 27.

{¶ 24} But we have never held that either or both of these requirements is a prerequisite to obtaining a recount in an election contest pursuant to R.C. 3515.13, which provides, "If any contest of election involves a recount of the ballots in any precincts, the court shall immediately order the ballots of the precincts in which the recount is demanded to be sent to the court in such manner as the court designates, and such court may appoint two master commissioners of opposite political parties to supervise the making of the recount." The statute contains no condition for a recount and instead leaves it within the court's discretion to determine if the election contest involves a recount of ballots.

{¶ 25} Consequently, R.C. 3515.13 is simply a tool that—in the proper, limited circumstances—can be used by a contestor to advance his or her claim by verifying the presence of irregularities and their impact on the election. See *In re Election of Nov. 6, 1990 for Office of Atty. Gen. of Ohio* (1991), 58 Ohio St.3d 103, 116, 569 N.E.2d 447 ("contestor could have verified his charges [of irregularities] by asking for a court-supervised recount under R.C. 3515.13 as part of this election contest"); *Harmon*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, ¶ 34 ("Nor did Harmon attempt to invoke the recount procedure in R.C. 3515.13" to prove his election-contest claim).

{¶ 26} Finally, the court had sufficient evidence before it to order the limited recount of Precinct D under R.C. 3515.13. According to Taft's verified petition and the board's investigative report attached to the petition, Precinct D is where the alleged election irregularity occurred.

{¶ 27} Therefore, the common pleas court did not err in granting Taft's request for a court-supervised recount of Precinct D in accordance with R.C. 3515.13.

### Recount Order: Equal Protection

{¶ 28} Bain further claims that the common pleas court erred in ordering a recount of only one precinct in Pepper Pike because the order violated the voters' constitutional right of equal protection. Bain cites *Bush v. Gore* (2000), 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388, in support of his proposition.

{¶ 29} Bain is mistaken. In *Bush*, the United States Supreme Court simply held that court-ordered manual recounts for the 2000 presidential election

violated the voters' right to equal protection because "standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county from one recount team to another." Id. at 106, 121 S.Ct. 525, 148 L.Ed.2d 388.

{¶ 30} Conversely, in this case, there is no allegation or evidence of different standards being applied by election officials to accept or reject contested ballots. Instead, it appears that election officials applied the same statutory standard. See, e.g., R.C. 3515.04 ("If a county used punch card ballots and if a chad is attached to a punch card ballot by three or four corners, the voter shall be deemed by the board not to have recorded a candidate, question, or issue choice at the particular position on the ballot, and a vote shall not be counted at that particular position on the ballot in the recount").

{¶ 31} The court did not need to order a recount of all of the precincts in Pepper Pike. The election contest was specifically limited to one precinct, and there was no evidence that any other precincts had experienced the same counting problem as Precinct D's. Therefore, the common pleas court did not, through arbitrary and disparate treatment, "value one person's vote over that of another." *Bush*, 531 U.S. at 104–105, 121 S.Ct. 525, 148 L.Ed.2d 388.

## Equitable Estoppel

{¶ 32} Bain contends that the common pleas court erred in holding that the election ended in a tie vote, because Taft was estopped from challenging the initial recount procedure that had resulted in the board's certification of Bain as the victor by virtue of Taft's original acquiescence in that procedure.

{¶ 33} "In cases in which we have found equitable estoppel in an election contest, irregularities were plain on the face of the ballot, and the contestors were aware of the alleged defects prior to the election." *In re Contested Election of Nov. 2, 1993* (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859.

{¶ 34} Taft is not estopped from instituting his election contest. His claimed election irregularity—the board's improper counting of a single ballot from Precinct D during its initial recount—was not plain on the face of the unpunched ballots, and Taft was not aware of the potential defect until after the board's December 16, 2005 administrative review and December 19, 2005 investigative report. In addition, this is not a case where he should have been aware of the single ballot in question before the board's investigation. Cf. *Maschari*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 34–36 (contestor estopped from contesting election based on board's no-challenge policy for cross-over voters because she should have been aware of the policy and had actively solicited cross-over voters).

### Denial of Right to Evidentiary Hearing

{¶ 35} During the March 1, 2006 supervised recount, the common pleas court specified that it was not conducting an evidentiary hearing and denied Bain's request for a hearing at which he could cross-examine witnesses.

{¶ 36} R.C. 3515.11 provides that "[t]he proceedings at the trial of the contest of an election shall be similar to those in judicial proceedings, in so far as practicable." Judicial proceedings manifestly permit the opportunity to present evidence.

{¶ 37} Election-contest cases are no different. "[T]he election-contest statutes envision the opportunity to submit testimony." See *Crane v. Perry Cty. Bd. of Elections*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 31, citing R.C. 3515.12; *In re Election on the Issue of Zoning the Southeasterly Section of Swanton Twp.* (1982), 2 Ohio St.3d 37, 39, 2 OBR 581, 442 N.E.2d 758, fn. 1 ("There is no question that contestors-appellants had the ability to call as witnesses any voter ineligible to vote on the zoning issue who might have done so [under R.C. 3515.12]"). "Contestees in election contests have the right to present evidence in rebuttal." *Crane*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 29.

{¶ 38} The common pleas court appears to have based its decision solely on the parties' pleadings and the court-supervised recount. In effect, the court granted summary judgment in favor of Taft. The court's judgment, however, was improper because Taft never filed a motion for summary judgment, and there remains a genuine issue of material fact. See, e.g., *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335, syllabus ("Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party"); *State ex rel. J.J. Detweiler Ents., Inc. v. Warner*, 103 Ohio St.3d 99, 2004-Ohio-4659, 814 N.E.2d 482, ¶ 13–16 (exception to general rule prohibiting summary judgment in favor of a nonmoving party does not apply when genuine issues of material fact exist). In Bain's affidavit attached to his summary-judgment motion, he states that during the board's December 16, 2005 administrative review of the disputed ballot, he observed that the chad was attached by at least three corners to the ballot and that the flexing of the ballot by election officials altered its condition. This evidence is sufficient to raise a genuine issue of material fact about whether the ballot should properly be counted for Taft.

{¶ 39} Therefore, the common pleas court erred in failing to conduct an evidentiary hearing in the election contest.

### Board Determination

{¶ 40} R.C. 3515.14 specifies that "[i]f the court decides that the election resulted in a tie vote, such decision shall be certified to the board of elections

having jurisdiction and said board shall publicly determine by lot which of such persons shall be declared elected."

{¶ 41} The plain language of this provision sets forth the following chronological sequence: (1) the court determines that the election results in a tie vote, (2) the court then certifies its decision to the board of elections, and (3) the board then publicly determines by lot which of the persons shall be declared elected. R.C. 3515.14 thus contemplates that the board's determination by lot be made *after* the court's election-contest decision that the election resulted in a tie vote, and not *before* the election contest. Instead, the board erroneously relied on its chairman's previous coin flip, which was made pursuant to R.C. 3505.33 before the election contest, and was subsequently invalidated by the board's certification of Bain as the victor after the automatic recount required by R.C. 3515.011. In addition, because the election-contest result differed from the final, precontest decision of the board, the board of elections was not free to use its chairman's previous coin flip. Cf. *Orewiler v. Fisher* (1938), 133 Ohio St. 608, 11 O.O. 315, 15 N.E.2d 132 (where original declaration of tie vote and determination of winner by lot was not changed by either the recount or the election contest, the board of elections could rely on the original, precontest lot determination). Therefore, the board erred in relying on its previous coin flip to determine the winner. If, following remand, the court of common pleas conducts an evidentiary hearing and concludes that a tie vote occurred, the board must then conduct a new determination by lot.

## Conclusion

{¶ 42} The common pleas court erred in determining the election contest without first conducting an evidentiary hearing. Based on the foregoing, we reverse the judgment of the common pleas court and remand the cause for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Kenneth J. Fisher Co., L.P.A., and Kenneth J. Fisher, for appellee Taft.

Buckley King, L.P.A., and Richard M. Bain; McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Robert T. Glickman, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Reno J. Oradini Jr., Assistant Prosecuting Attorney, for appellees Cuyahoga County Board of Elections and members.