SQUIRE, APPELLANT, *v.* GEER ET AL., APPELLEES.

[Cite as *Squire v. Geer,* 117 Ohio St.3d 506, 2008-Ohio-1432.]

(No. 2007–1684—Submitted February 26, 2008—Decided April 2, 2008.)

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying an election contest. Because the appellant failed to establish by clear and convincing evidence that any election irregularities affected enough votes to change or make uncertain the election result, we affirm.

{¶ 2} On November 7, 2006, an election was held in Franklin County, Ohio, to elect a candidate to the office of judge of the Franklin County Court of Common Pleas, Domestic Relations Division and Juvenile Branch, for the term commencing January 5, 2007. The candidates were appellant, Carole R. Squire,[1] and appellee Christopher J. Geer.

{¶ 3} Appellee Franklin County Board of Elections conducted the official canvass of the election returns on November 27, 2006, and declared Geer the winner by a vote of 137,941 to 124,877, a margin of 13,064 votes. Squire requested a recount of 35 precincts as well as all absentee and provisional ballots. On December 14, 2006, after conducting this recount, the board of elections again declared Geer the winner, this time by a vote of 137,979 to 124,910, a margin of 13,069 votes.

{¶ 4} On December 22, 2006, Squire filed a complaint in the Court of Appeals for Franklin County contesting the election. Squire claimed that "[g]ross irregularities and stunning violations of Ohio law occurred in connection with the casting of ballots, tabulation of votes, and recount procedures affecting enough votes to change or make uncertain the November 7, 2006 election result." Squire requested that the election be set aside and declared invalid and that she be declared the victor. In her complaint as well as by separate motion, Squire requested that the court of appeals conduct a recount.

{¶ 5} The court of appeals ordered the board of elections to forward to the clerk of the court all ballot materials pertinent to the recount in the election, including "ballots, poll books, paper rolls, provisional ballots and/or books, and any other records necessary for this court to determine the merits of this contest action." In accordance with the order, the board gathered the relevant materials but was advised by the court administrator to keep the records until the court

---

1. On October 25, 2007, in a disciplinary proceeding, the court suspended Squire from the practice of law for two years, with 12 months stayed on the condition that she commit no further disciplinary violations within the two-year period of suspension. *Disciplinary Counsel v. Squire*, 116 Ohio St.3d 110, 2007-Ohio-5588, 876 N.E.2d 933.

could find a suitable location for them. Upon Squire's affidavit seeking disqualification of the judges of the Franklin County Court of Appeals, the chief justice disqualified them and appointed three judges from outside the county to preside over the case.

{¶ 6} Following a trial pursuant to R.C. 3515.08(C) and 3515.11, the court of appeals denied the election contest. The court of appeals concluded that although Squire had established that one or more election irregularities had occurred, she "failed to prove by clear and convincing evidence that a sufficient number of votes were actually affected to make the outcome of the election uncertain." The court also denied Squire's motion for a second recount.

{¶ 7} The cause is now before us upon Squire's appeal and upon appellees' joint motion to strike appellant's reply-brief appendix and the portions of appellant's reply brief relying on the appendix.

## Motion to Strike

{¶ 8} Squire submitted an appendix with her reply brief that included six documents that were not part of the record before the court of appeals. One of these documents is the December 7, 2007 final report of the evaluation and validation of election-related equipment, standards, and testing in Ohio prepared as part of a project initiated by the secretary of state. Squire relies on this report's findings in her reply brief.

{¶ 9} On January 15, 2008, appellees filed a joint motion to strike appellant's reply-brief appendix and portions of appellant's reply brief relying on the appendix. On January 25, appellant filed a memorandum in opposition.

{¶ 10} "The determination of a motion to strike is vested within the broad discretion of the court." *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 26. In exercising this discretion here, we grant appellees' motion for the following reasons.

{¶ 11} First, Squire's new material may not be considered. " 'We cannot * * * add matter to the record before us that was not part of the court of appeals' proceedings and then decide the appeal on the basis of the new matter.' " *North v. Beightler,* 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶ 7, quoting *Dzina v. Celebrezze,* 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 16. We have applied this principle in an election-contest appeal to strike portions of an appendix in a brief that were not part of the trial court record. *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859.

{¶ 12} Second, although appellate courts can take judicial notice of certain matters, see, e.g., *State ex rel. Everhart v. McIntosh,* 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 9–10, the exhibits in Squire's appendix to her reply

brief do not contain facts susceptible of judicial notice. Evid.R. 201 specifies that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonabl[y] be questioned." Squire's exhibits, including the report prepared as part of the project initiated by the secretary of state, do not contain facts that are "not subject to reasonable dispute," as required by the rule. See *Natl. Distillers & Chem. Corp. v. Limbach* (1994), 71 Ohio St.3d 214, 215–216, 643 N.E.2d 101.

{¶ 13} Therefore, we grant appellees' motion and strike Squire's reply-brief appendix as well as the portions of her reply brief relying on the appendix.

## Election Contest—Standard of Proof

{¶ 14} Squire contests the November 7, 2006 election for the office of judge of the Franklin County Court of Common Pleas, Domestic Relations Division and Juvenile Branch. In assessing Squire's claim, "every reasonable presumption should be indulged in favor of upholding the validity of an election and against ruling it void." *In re Election Contest of Democratic Primary Election Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 262, 725 N.E.2d 271. "[A]n election result will not be disturbed unless the evidence establishes that the result was contrary to the will of the electorate." Id.; see also *Crane v. Perry Cty. Bd. of Elections*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 20.

{¶ 15} To prevail in her election contest, Squire "had to establish by clear and convincing evidence that one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the * * * election," *Maschari v. Tone*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 21. "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus; *Crane*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 22.

{¶ 16} Squire asserts that she has met this standard of proof by establishing that the board of elections committed errors in four separate areas: (1) use of an uncertified voting system during the November 7, 2006 election, (2) failure to comply with R.C. 3515.13 and a court of appeals order to forward all ballot materials pertinent to the recount to the court of appeals, (3) noncompliance with the secretary of state's recount requirements and procedures, and (4) violation of

the postelection statutory duties to preserve records. These assertions are next considered.

## Uncertified Voting System

{¶ 17} In the November 7, 2006 election, the board of elections used iVotronic voting machines supplied by Election Systems & Software, Inc. ("ES & S"). In October 2006, the United States Election Assistance Commission provisionally certified the ES & S voting system "in its evaluated configuration." The evaluated configuration included the following module versions: (1) Election Data Manager—7.4.4.0, (2) Hardware Programming Manager—5.2.4.0, and (3) M100 Optical Scanner—5.2.1.0. The versions of these modules used by the board of elections in the November 7, 2006 election were (1) Election Data Manager—7.4.3.0, (2) Hardware Programming Manager—5.2.2.0, and (3) M100 Optical Scanner—5.2.0.0. These versions had been previously certified at the federal and state level, although in a different configuration.

{¶ 18} "No voting machine, marking device, automatic tabulating equipment, or software for the purpose of casting or tabulating votes or for communications among systems involved in the tabulation, storage, or casting of votes shall be * * * put in use, or continued to be used * * * unless it * * * ha[s] been certified by the secretary of state * * *." R.C. 3506.05(B). "The secretary of state, in consultation with the board of voting machine examiners, shall establish, by rule, guidelines for the approval, certification, and continued certification of the voting machine, marking devices, and tabulating equipment to be used under Title XXXV of the Revised Code." R.C. 3506.05(H)(1). The secretary of state promulgated Ohio Adm.Code 111:3–3–01(C)(15), which requires voting equipment to have been "certified by an independent testing authority as meeting or exceeding the minimum requirements of the federal election commission voting system standards."

{¶ 19} As the court of appeals concluded, the board's use of a configuration of modules that was not certified by the secretary of state or the United States Election Assistance Commission constituted an election irregularity because it violated the pertinent statute and rule.

{¶ 20} Squire, however, still had to prove by clear and convincing evidence that this irregularity affected enough votes to change or make uncertain the election result. *Maschari*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 21. Squire's expert witness, Dr. Rebecca Mercuri, testified that because she had no way of knowing that the voting system as configured worked properly, she had to "assume to the contrary." Crediting this testimony, however, would result in an impermissible shift of the burden of proof to the contestee.

{¶ 21} Moreover, appellees introduced evidence that this election irregularity did not affect sufficient votes to either change or make uncertain the election result. According to ES & S representatives, the different versions of the modules that were used were compatible with the certified system and provided accurate election results.

{¶ 22} Finally, Squire's reliance on a complaint seeking civil damages filed by California's secretary of state against ES & S for supplying an uncertified voting system and a judgment affirming a federal district court's judgment against a voting-machine manufacturer for breach of implied warranty, *Montgomery Cty. v. Microvote Corp.* (C.A.3, 2003), 320 F.3d 440, is misplaced because neither case involved an election contest.

{¶ 23} Therefore, the court of appeals did not err in holding that Squire failed to establish that the board's use of an uncertified configuration of modules either changed or made uncertain the election result.

### Transmission of Ballot Materials to Court of Appeals

{¶ 24} R.C. 3515.13 provides, "If any contest of election involves a recount of the ballots in any precincts, the court shall immediately order the ballots of the precincts in which the recount is demanded to be sent to the court in such manner as the court designates, and such court may appoint two master commissioners of opposite political parties to supervise the making of the recount." Pursuant to R.C. 3515.13, the court of appeals ordered the board of elections to transmit the ballot materials pertinent to the recount to the clerk of the court. But the board of elections did not immediately do so because a court representative advised it to hold off on transmitting the materials due to a lack of space.

{¶ 25} Squire claims that the board's failure to comply with R.C. 3515.13 and the court of appeals' order requires reversal of the court of appeals' judgment. Squire's claim lacks merit.

{¶ 26} "R.C. 3515.13 is simply a tool that—in the proper, limited circumstances—can be used by a contestor to advance his or her claim by verifying the presence of irregularities and their impact on the election." *Taft v. Cuyahoga Cty. Bd. of Elections,* 110 Ohio St.3d 471, 2006-Ohio-4204, 854 N.E.2d 472, ¶ 25. R.C. 3515.13 leaves it within the court's discretion to order a court-supervised recount. Id. at ¶ 24–26. There is nothing to indicate that the court of appeals abused its discretion in ultimately rejecting Squire's request for a court-supervised recount here.

{¶ 27} The evidence submitted at the election-contest trial also established that once the court of appeals issued its order, the board of elections impounded the pertinent · materials and secured them in a locked area under the sheriff's

protection in the board's warehouse. The court of appeals thus properly concluded that there was no evidence that these records were tampered with or altered in any way.

## Recount Procedures

{¶ 28} Squire next contends that the board of elections committed several irregularities when the board failed to follow the secretary of state's recount requirements and procedures. Squire claims that the board also violated R.C. 3515.04 and that these violations of R.C. Title 35 are prima facie evidence of fraud. See R.C. 3599.42.

{¶ 29} Squire argues that any violation of R.C. Title 35 obviates the need for a contestor to establish by clear and convincing evidence that any irregularities affected enough votes to change or make uncertain the result of the election. But we have rejected this specific argument and emphasized that "it is immaterial which type of irregularity is alleged in an election contest. The inquiry remains the same: whether there is clear and convincing evidence that an irregularity occurred and, if so, whether there is clear and convincing evidence that it affected enough votes to change or make uncertain the result of the elections." *In re Election of November 6, 1990 for the Office of Atty. Gen. of Ohio* (1991), 58 Ohio St.3d 103, 106, 569 N.E.2d 447.

{¶ 30} Regarding the second requirement for a successful election contest, Squire failed to establish by clear and convincing evidence that any election irregularity involving the board's recount procedure affected enough votes to change or make uncertain the election result. Despite evidence that in most of the precincts, the total number of ballots cast on the voting machines did not match the number of signatures in the poll books, the board of elections conducted an analysis of the vote disparities and concluded that there was a maximum of 2,824 more votes cast than signatures recorded and a minimum of 2,116 more votes cast. This difference does not alter or render uncertain the election result, which Geer won by more than 13,000 votes according to both the official canvass and the recount.

## Postelection Procedures

{¶ 31} Under R.C. 3505.32(A), "not earlier than the eleventh day or later than the fifteenth day after a general or special election * * * the board of elections shall begin to canvass the election returns from the precincts in which electors were entitled to vote at that election." Prior to the tenth day after a general election, the board may examine the poll books and correct errors or defects in them. R.C. 3505.32(D). The board of elections must carefully preserve the ballots and poll books used in the election and seal them after the results have been certified, and the board shall not permit the seals to be broken or changes

to be made to the records while they are in the board's custody except for those changes permitted by R.C. 3505.32. See R.C. 3505.31.

{¶ 32} Squire claims, inter alia, that the board of elections violated R.C. 3505.31 and 3505.32 by making changes and corrections to the poll books, permitting employees to handle the records for the purpose of auditing the results, and maintaining the records in an open location and not under seal.

{¶ 33} Appellees introduced evidence, however, that rebutted Squire's claims. The board of elections staff reviewed the poll books and made corrections and changes to them only during the nine-day period before the official canvass, as authorized by R.C. 3505.32(D). The board employees also used the election records that were not impounded to prepare an audit to compare the number of signatures in the poll books with the machine count and to make a record of which electors voted, but the records were not altered during the process. As the court of appeals concluded, it is not an irregularity for board of elections employees to have access to the poll books to conduct the essential functions of their jobs.

{¶ 34} In addition, the board of elections had broken the seals on some of the records because the Squire–Geer recount was the third recount for the November 7, 2006 election. Although the records were unsealed and were placed in a warehouse that was not occupied exclusively by the board, the records were under around-the-clock security provided by the county sheriff.

{¶ 35} Therefore, Squire failed to establish that any minimal irregularities in the board's postelection procedures changed or made uncertain the election result.

## Conclusion

{¶ 36} Because Squire failed to prove by clear and convincing evidence that any election irregularities affected enough votes to change or make uncertain the election result, the court of appeals properly denied Squire's election contest. See *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, ¶ 40. Our holding is consistent with the court's reluctance to disturb the vote of citizens "except under extreme circumstances that clearly affect the integrity of the election." *Election of November 6, 1990 for the Office of Atty. Gen. of Ohio*, 58 Ohio St.3d at 105, 569 N.E.2d 447; *Crane*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 21. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

Percy Squire Co., L.L.C., and Percy Squire, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Patrick J. Piccininni and Nick A. Soulas Jr., Assistant Prosecuting Attorneys, for appellee Franklin County Board of Elections.

Christopher J. Geer, pro se.