[Cite as *Furnas v. Clay Twp. Trustees*, 2012-Ohio-5408.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

BRENT FURNAS                                       :

    Plaintiff-Appellant                       :         C.A. CASE NO.    25239

v.                                                 :         T.C. NO.    11CV6149

CLAY TOWNSHIP TRUSTEES            :             (Civil appeal from
                                                                Common Pleas Court)

    Defendant-Appellee                    :

                                                   :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___21st___ day of ___November___, 2012.

· · · · · · · · · ·

JEFFREY M. SILVERSTEIN, Atty. Reg. No. 0016948 and JASON P. MATTHEWS, Atty. Reg. No. 0073144, 627 South Edwin C. Moses Blvd., Suite 2-C, Dayton, Ohio 45417
    Attorney for Plaintiff-Appellant

DOUGLAS M. TROUT, Atty. Reg. No. 0072027, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}    This matter is before the Court on the Notice of Appeal of Brent Furnas, filed June 8, 2012.  Furnas appeals from the May 15, 2012 decision of the trial court which denied Furnas' Motion to Strike the brief of the Clay Township Board of Trustees ("CTBT")

and affirmed the decision of the CTBT to terminate Furnas' employment with the Clay Township Police Department ("Department"). We hereby affirm the decision of the trial court.

**{¶ 2}** The trial court's decision reflects the following undisputed facts regarding Furnas' termination. On August 9, 2011, Clay Township Chief of Police Donald Perkins served Furnas, a sergeant, with a Charging Form which indicated that the Montgomery County Sheriff's Office ("MCSO") had conducted an investigation related to Furnas' conduct during the week of March 31, 2011. The Charging Form referred to a report produced by the MCSO, and it indicated that Furnas had been provided a copy of the report on July 21, 2011. Furnas was charged with violating three of the Department's Rules of Conduct, namely Unsatisfactory Performance, Unbecoming Conduct, and 3 counts related to Courtesy. Perkins and three trustees signed the Charging Form. The Charging Form advised Furnas that a "hearing regarding 'disciplinary action up to and including termination of your employment'" would occur on August 16th, 2011, at 7:00 PM.

**{¶ 3}** On that date, Furnas appeared at the hearing represented by counsel. The trustees heard the testimony of the complaining witness, Sandra Welborn, Perkins, and Officers Steve Hodge and Anthony Scott of the Department, all of whom were cross-examined by counsel for Furnas. Furnas did not testify or present evidence. The trial court noted that, on February 21, 2011, Perkins notified officers by interoffice memorandum that he would be on vacation for several weeks, and that Furnas would be in charge. Welborn testified that on or about March 28, 2011, she reported to the Department that her home and vehicles had been vandalized by the use of paintball guns. Hodge initially

responded to the scene and advised her that Furnas would handle the subsequent investigation. Welborn later learned that her home might be targeted in the future for another attack, and she contacted Perkins directly, who was on extended vacation leave. Perkins advised her that Furnas would handle the investigation.

{¶ 4}    On March 31, 2011, Welborn went to the Department to provide Furnas with copies of information that she had acquired regarding the possibility of further acts of vandalism at her home. The trial court cited her testimony that Furnas slapped his hands together "'almost in [her] face'" and told her that the matter was "'out of his hands,'" since Welborn had contacted Perkins directly. Furnas told her that Perkins would handle the investigation. Furnas then called Perkins in Welborn's presence, and after speaking with him, handed the phone to Welborn. Perkins assured Welborn that Furnas would handle the matter. After the call was concluded, Furnas told Welborn that he would not be acting on her case.

{¶ 5}    Welborn contacted the MCSO that evening due to her frustration with Furnas, and the trial court noted that Welborn described Furnas' treatment of her as "'[v]ery disrespectful,'" as though her complaint "'was a waste of his time.'"

{¶ 6}    Perkins told Hodge, as well as Furnas directly, that the Welborn investigation was Furnas' responsibility. The trial court noted that when Perkins received a copy of Welborn's written complaint, he contacted Chief Deputy Scott Landis at MCSO and requested an outside investigation, which resulted in the disciplinary action against Furnas.

{¶ 7}    The trial court noted Hodge's testimony that Furnas had stated, "'I'm not

going to follow up on it, Chief can bring his ass in here and follow up on it.'" The court also noted Hodge's testimony that Furnas referred to the underlying criminal damaging report as the "'Sandra Welborn bitch's incident.'"

{¶ 8} The trial court also noted Scott's testimony that he observed Welborn's encounter with Furnas on March 31, 2011, and that Furnas subsequently called Welborn another derogatory term.

{¶ 9} Furnas appealed the decision of the CTBT, pursuant to R.C. 505.49, 2505, 2506, and 119 on August 26, 2011, asserting that he was denied due process of law, specifically a "post-termination hearing" and "progressive discipline," and that the decision of the CTBT was not supported by reliable, probative or substantial evidence. Furnas also moved the court to strike the brief filed by CTBT as untimely.

{¶ 10} The court initially addressed Furnas' motion to strike CTBT's untimely brief. The court noted its "inherent power" to manage its own docket and concluded, "the only prejudice to Appellant resulting from the late filing of Appellee's brief is the length of any resulting delay in the resolution of this appeal, which delay would not be relieved by granting Appellant's motion to strike."

{¶ 11} Regarding Furnas' appeal, the trial court determined that R.C. 119.12 provides the appropriate standard of review for an R.C. 505.49 administrative appeal, although it also quoted R.C. Chapter 2506. Regarding the denial of a post-termination hearing, the court noted that Furnas was provided written notice of the charges against him and notice that a hearing regarding disciplinary action, up to and including termination, would occur on August 16, 2011. According to the trial court, "[g]iven such an explicit

warning of the possibility of termination, a reasonable person surely would recognize that his future employment was in jeopardy." The court determined that the CTBT had "no additional due process obligations" beyond affording him an opportunity to respond to the charges. It was also significant to the trial court that Furnas was provided a copy of the MCSO's report, upon which the charges were based; that he was represented by counsel at the August 16, 2011 hearing; that the majority of the witnesses interviewed in the course of the investigation testified at the hearing; that counsel for Furnas subjected them to cross-examination and also presented legal arguments and a closing statement; and finally that Furnas had the opportunity to testify at the hearing. The court concluded that Furnas was provided notice and an opportunity to respond, as well as an opportunity to challenge the evidence against him, and that "no further post-termination hearing was necessary in order to satisfy the constitutional requirements of the Due Process Clause." Finally, the court concluded that "Ohio's statutory scheme adequately protects the due process interests of public employees by allowing for 'post-termination judicial proceedings.'" The court found that Furnas was not denied an opportunity to file an administrative appeal, and concluded that his "pursuit of relief from [the decision of the CTBT] via this appeal constitutes his administrative appeal, brought in the proper forum of this common pleas court."

{¶ 12} Regarding the "legal adequacy" of the record to support Furnas' termination,
the court initially noted that, while some portions of the transcript of the hearing are marked "inaudible," or refer to an "Unidentified Speaker," in "nearly all instances" the content of

such omissions is readily discernible or "is not critical to this Court's consideration of the evidence." The trial court emphasized that "the testimony of all four witnesses as transcribed is sufficiently complete and intelligible for this court to make sense of the hearing record. Accordingly, any minor flaws in the record do not impede this court's ability to render an informed decision based upon the evidence thus presented."

{¶ 13} The court noted that it found Furnas' reliance upon the lack of evidence of prior disciplinary action against him unpersuasive, noting that he offered no authority for "his implicit premise that the Trustees were required to take a progressive approach to any disciplinary action against Furnas before imposing the drastic measure of termination," or that he was entitled to "additional protection under common law concepts" beyond statutory protections.

{¶ 14} Finally, the court concluded that the evidence supported CTBT's decision to terminate Furnas' employment. The court cited Welborn's testimony that Furnas "flatly refused to investigate the threat of future damage to her property." The court also cited Perkins' testimony that he instructed Furnas both in writing and orally, that Furnas was responsible for investigating Welborn's complaint as well as any follow-up. Hodge's description of Furnas' "defiance" to Perkins' instruction, as well as Hodge's and Scott's testimony that Furnas used vulgarity when speaking of Welborn were also significant to the trial court. According to the court:

> * * * In light of that unfavorable testimony from the four witnesses who personally appeared at Appellant's pre-termination hearing, there is no basis for concluding that the [CTBT] improperly relied on the results of the

investigation performed by the [MCSO] in deciding to terminate Furnas' employment. The [CTBT's] review of that investigatory report prior to the hearing is not enough to impugn their fairness at the later adversary proceeding.

{¶ 15} Regarding Furnas' continued employment after the incident of March 31, 2011 until his August 16, 2011 termination, the court "construe[d] that period of continued tenure as evidence of the Township's good faith effort to conduct a thorough and independent investigation into the complaint against Appellant before imposing any detrimental employment consequences."

{¶ 16} The court found that while the evidence clearly supported a conclusion that Furnas violated the Department's Rule of Conduct regarding "Unsatisfactory Performance," a "more substantial challenge would appear to be evoked by Appellant's arguments related to the 'Unbecoming Conduct' and 'Courtesy' violations with which he was charged," since Welborn's testimony made clear that she did not hear Furnas' vulgar comments, and since Perkins, Hodge and Scott "all testified that the use of obscene language within the department was not uncommon, generally not regarded as offensive, and usually did not result in disciplinary complaints or action." The trial court further noted, however, "the Rules of Conduct on which those latter charges were based are phrased broadly enough to encompass other behavior that the evidence attributes to Appellant." Consistent with R.C. 119.12, the court concluded that the CTBT's "August 16, 2011 decision to terminate Furnas' employment is supported by reliable, probative and substantial evidence, and further that Furnas's pre-termination hearing on the same date comported with the requirements of the

Due Process Clause of the U.S. Constitution."

{¶ 17} We initially note that Furnas' brief does not comply with the requirements of Rule 16 of the Ohio Rules of Appellate Procedure, which provides that an appellate brief must contain a statement of the assignments of error presented for review, as well as a statement of the issues presented for review. Instead, Furnas sets forth an "Argument," with subsections entitled: "Due Process"; "Trial Court's Disregard for Its Own Rule and Abuse of Discretion," and "Progressive Discipline."

{¶ 18} As we begin our analysis, we note that the the trial court erroneously determined that an R.C. 505.49 administrative appeal is governed by R.C. 119.12, in reliance upon *In re Brackett*, 2d Dist. Montgomery No. 11799, 1990 WL 56898 (May 1, 1990). R.C. 119.12 provides in relevant part:

> * * *
>
> Any party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin County * * * except that appeals under division (B) of section 124.34 of the Revised Code from a decision of the state personnel board of review or a municipal or civil service commission shall be taken to the court of common pleas of the county in which the appointing authority is located * * *.
>
> * * *
>
> The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional

evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *

{¶ 19} By its express language, R.C. 119.12 "applies to an order of a state 'agency.'" *Madison Twp. Bd. of Trustees v. Donohoo*, 2d Dist. Montgomery No. 14007, 1994 WL 692929, *2 (Oct. 12, 1994) ("We have shown that while R.C. 119.12 controls administrative appeals under certain circumstances, it is not relevant in appeals from political subdivisions, as in the case *sub judice*.") . Donohoo, a police lieutenant, was suspended by the Madison Township Board of Trustees for one day without pay for insubordination, and the common pleas court applied R.C. 119.12 and reversed the Board's decision. The Board appealed, asserting in part that the court erred in concluding that the appeal was governed by R.C. 119.12. This Court therein noted:

* * * Ohio law is clear that townships are political subdivisions, not agencies, of the state. * * * Moreover, township trustees are not "agencies" for the purposes of Chapter 119. * * *

Neither does the record indicate that Madison Township is a civil service township under R.C. 124.01(G) nor that Lt. Donohoo was a classified employee pursuant to R.C. 124.11(B). Were these the facts, R.C. 119.12 would govern this appeal. R.C. 124.34. *Id.*, *2-3.

{¶ 20} This Court further concluded that the "proper statutory scheme that governs

the appeal and review of this type of administrative decision is found in Chapter 2506 of the Revised Code." *Id.*, * 3. R.C. 2506.01 provides in relevant part, " * * * every final order, adjudication, or decision of * * * any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code." This Court concluded that the standards of review under "both R.C. 2506.04 and 119.12 are substantially similar," such that the common pleas court's error in applying R.C. 119.12 was harmless, pursuant to Civ.R. 61, which requires in part a court to "disregard any error or defect in the proceedings which does not affect the substantial rights of the parties." *Id.*, * 4.

{¶ 21} Regarding the appropriate framework for analysis in the court of common pleas, R.C. 2506.03 provides:

(A) The hearing of an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02[1] of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:

---

[1]"Within forty days after filing a notice of appeal in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the officer or body from the appeal is taken, upon the filing of a praecipe by the appellant, shall prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard and taken into consideration in issuing the final order, adjudication, or decision. * * *." R.C. 2506.02.

(1) The transcript does not contain a report of all evidence admitted or proffered by the appellant.

(2) The appellant was not permitted to appear and be heard in person, or by the appellant's attorney in opposition to the final order, adjudication, or decision, and to do any of the following:

(a) Present the appellant's position, arguments and conditions;

(b) Offer and examine witnesses and present evidence in support;

(c) Cross-examine witnesses and present evidence in support;

(d) Offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions;

(e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.

{¶ 22}    As this Court has previously noted:

When considering an administrative appeal, a court of common pleas must weigh the evidence in the record to ascertain whether there exists a preponderance of reliable, probative, and substantial evidence to support the administrative agency's decision. R.C. 2506. 04 * * *. Consistent with its findings, the court may affirm, reverse, vacate, or modify the decision or remand the matter to the body appealed from with instructions to enter a decision consistent with the findings or opinion of the court. R.C. 2506.04. The common pleas court "considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the

administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433.

The standard of review to be applied by an appellate court in an R.C. 2506.04 appeal is "more limited in scope." Id., citing *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. Under R.C. 2506.04, the court of appeals does not have the same extensive power to weigh the evidence as is granted to the common pleas court. While "[i]t is incumbent on the trial court to examine the evidence[,] [s]uch is not the charge of the appellate court." Id. An appellate court reviews the judgment of the common please court only on questions of law. *Kisil*, 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848, fn. 4. The appellate court's inquiry is limited to a determination of whether, as a matter of law, the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. Id. At 34, 12 OBR 26, 465 N.E.2d 848. In other words, in reviewing questions of law, the appellate court considers whether the trial court abused its discretion. Id. *Bowman v. Butler Twp. Bd. of Trustees*, 185 Ohio App.3d 180, 2009-Ohio-6128, 923 N.E.2d 663, ¶ 13-14 (2d Dist.).

**{¶ 23}** As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is

unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 24}** As this Court noted in *Donohoo*, the "major difference" between the standards of review in R.C. 119.12 and 2506.04, as set forth above, "is that the word 'preponderance' is omitted from R.C. 119.12." *Id.* This Court further noted:

"Preponderance" is defined as "the greater weight of evidence." * * * Thus, the R.C. 2506.04 [standard] seems to include the stricter requirement. However, the Ohio Supreme Court has chosen to treat the standards similarly. In *Dudukovich* [*v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979)], the Court labeled the two standards "analogous." * * * In *Hale v. Board of Edn.*(1968), 13 Ohio St.2d 92, the Court noted that the "preponderance of * * * evidence" phrase was adopted by the General Assembly in R.C. 2605.04 to emphasize the legislature's *general desire* that common pleas courts weigh evidence in administrative appeals. *Id.* at

96-97. *Id.*

*Donohoo*, at *4.

**{¶ 25}** Neither party raised the issue of the trial court's erroneous application of R.C. 119.12, and although the court concluded that CTBT's decision was supported by reliable, probative and substantial evidence, we conclude that the error is harmless.

**{¶ 26}** Regarding Furnas' assertion that he was denied due process of law, he directs our attention to *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 494 (1985), upon which the trial court also relied. Furnas asserts that the trial court "ignores the fact that the so-called pre-termination hearing was nothing more than an ambush, at which time without any ability of Furnas or his attorney to prepare, he was nonetheless presented with a perfunctory 'opportunity' to cross-examine witnesses." He asserts that the August 16, 2011 hearing "was not upon a final order, but rather a notice to 'consider disciplinary action up to and including termination . . .,'" quoting the August 9, 2011 Charging Form he received.

**{¶ 27}** As this Court has previously determined:

The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive a person of life, liberty, or property without due process of law." A two step analysis is used when considering a claim that due process rights were violated. First, a court must determine whether the claimant has a right or interest that is entitled to due process protection. Second, if the claimant was deprived of such a right or interest, the court must determine what process is due. *McDonald v. Dayton*, 146 Ohio App.3d

598, 2001-Ohio-1825, 767 N.E.2d 764, ¶ 20 (2d Dist.), citing *Louderrmill*.

{¶ 28}     As this Court has also noted:

In [*Loudermill*], the Court reviewed the termination of school employees in light of the due process standard under the Federal Constitution. The court indicated that the Ohio statute in question (R.C. 124.34) was constitutional. As for the due process claim, the Court indicated that the pretermination "hearing" need not be elaborate. Id. at 1495. As the Court stated: " . . . the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 1495. The Court indicated that all due process required was notice and an opportunity to respond. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. The Court concluded that "all the process that is due is provided by a pretermination opportunity to respond coupled with post-termination administrative procedures as provided by the Ohio statute." Id. at 1496. *Patton v. Bd. of Educ. of the Springfield City Schools*, 2d Dist. Montgomery No. 2227, 1986 WL 13672, * 5 (Dec. 5, 1986).

{¶ 29}   The version of R.C. 124.34 in effect when *Loudermill* was decided required that "the dismissed employee is to be provided with a copy of the order of removal giving

the reasons therefor. Within 10 days of the filing of the order with the Director of Administrative Services, the employee may file a written appeal with the State Personnel Board of Review or the Commission." *Loudermill*, fn. 6. The statute further provided: "'In the event such an appeal is filed, the board of commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority.'" *Id.* Finally, either side could subsequently obtain judicial review of the post-termination hearing. *Id.*

{¶ 30} We conclude that Furnas' reliance upon *Loudermill* is misplaced, and that Furnas is not entitled to the due process protections afforded by the statute at issue therein, namely post-termination administrative procedures.

{¶ 31} R.C. 505.49(B)(3) provides:

* * * [A] patrol officer, other police district employee, or police constable, who has been awarded a certificate attesting to the satisfactory completion of an approved state, county, or municipal police basic training program, as required by section 109.77 of the Revised Code, may be removed or suspended only under the conditions and by the procedures in sections 505.491 to 505.495 of the Revised Code. Any other patrol officer, police district employee, or police constable shall serve at the pleasure of the township trustees. In case of removal or suspension of an appointee by the board of township trustees, that appointee may appeal the decision of the board to the court of common pleas of the county in which the district is

situated to determine the sufficiency of the cause of removal or suspension. The appointee shall take the appeal within ten days of written notice to the appointee of the decision of the board.

{¶ 32} R.C. 505.491 to 505.495 set forth the grounds for termination and the procedures by which termination may take place. R.C. 505.491 provides:

* * * [I]f the board of trustees of a township has reason to believe that a chief of police, patrol officer, or other township police district employee appointed under division (B) of section 505.49 of the Revised Code * * * has been guilty, in the performance of the official duty of that chief of police, patrol officer, other township police district employee, * * * of bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, neglect of duty, gross immorality, habitual drunkenness, incompetence, or failure to obey orders given that person by the proper authority, the board immediately shall file written charges against that person, setting forth in detail a statement of the alleged guilt and, at the same time, or as soon thereafter as possible, serve a true copy of those charges upon the person against whom they are made. The service may be made on the person or by leaving a copy of the charges at the office or residence of that person. Return of the service shall be made to the board in the same manner that is provided for the return of the service of summons in a civil action.

{¶ 33} R.C. 505.492 requires that the charges filed pursuant to R.C. 505.491 must be heard at the next regular meeting of the township board of trustees, "unless the board

extends the time for the hearing, which shall be done only on the application of the accused. The accused may appear in person and by counsel, examine all witnesses, and answer all charges against the accused."

{¶ 34} The trial court did not note whether Furnas is a certified police officer, such that he is entitled to the due process protections afforded in sections 505.491 to 505.494, or whether he serves "at the pleasure of the township trustees" and is accordingly subject to removal without prior notice or hearing. Regardless of his status, the decision of the trial court makes clear that CTBT provided Furnas with notice and an opportunity to be heard. Furnas was served a copy of the charges against him on August 9, 2011, the notice indicated that the charges would be heard at the next regular meeting of the CTBT on August 16, 2012, and the notice indicated that termination would be considered. Furnas appeared, represented by counsel who cross-examined all witnesses and presented closing arguments. Since the trial court did not err in concluding that Furnas' "due process challenge to the [CTBT] is not well taken," an abuse of discretion is not demonstrated.

{¶ 35} Furnas next asserts that the trial court erred in overruling his motion to strike the untimely brief of CTBT, pursuant to local rules. CTBT's brief, which was due on December 10, 2011, pursuant to the briefing schedule set forth by the court, was filed on March 30, 2012. Loc.R. 2.37 governs administrative appeals and provides as follows in relevant part:

I. This rule shall govern all appeals from administrative agencies to the extent that the appeals are not otherwise governed by statute or by the rules of the Ohio Supreme Court.

\* \* \*

III.  BRIEFS:

A.  The Court may require arguments of counsel to be written and included in briefs.   Unless otherwise ordered by the Court or fixed by statute or by rule or the Ohio Supreme Court, all briefs shall be filed as follows:

1.  Unless the court has authorized an extension of time, the appellant shall file a claim of error, brief, and all other essential papers within forty (40) days after the notice of appeal has been filed or the filing of the transcript, whichever is later.   Failure to file briefs and assignment of error within the requisite period of time may result in dismissal of the appeal as directed by the Court.

2.  Within thirty (30) days after service of appellant's brief, counsel for appellee shall file his brief.

\* \* \*

4.  All requests for extensions or reductions of time to file briefs or other papers shall be approved only before the requisite filing time has expired.

{¶ 36}    A trial court's procedural rulings will not be reversed absent an abuse of discretion.  *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, ¶ 16.

{¶ 37}    CTBT did not move the court for an extension of time to file its brief prior to the expiration of the time period within which it was due.  We note, however, that

Furnas' filing of April 5, 2012 was entitled, "Appellant's Motion to Strike and Memorandum in Support And/Or Reply Brief," and that he asked the court to *either* strike CTBT's brief, or alternatively, to consider Furnas' additional arguments set forth therein in reply to CTBT's brief. We further note Furnas' suggestion in his brief that he was not prejudiced by the trial court's consideration of CTBT's brief; according to Furnas, the "trial court did not weigh any substantive legal arguments made by [CTBT] in their brief because none were included. That brief did not include one case either to affirmatively argue the Trustees' position or to contradict the arguments made by Furnas." We conclude that an abuse of discretion is not demonstrated by the trial court's failure to strike CTBT's brief.

{¶ 38} In the final subsection of his "Argument," regarding the use of progressive discipline, Furnas asserts that he "had no opportunity to present the Police Department Policy Procedural Manual or the Township Personnel Policies," and "[t]he issue having been raised by Furnas, it was incumbent upon the Court to inquire about the existence or non-existence of such a policy since no such reference was contained in the transcript." As discussed at length above, Furnas was given the requisite notice and opportunity to be heard. Furnas did not offer evidence of a policy of progressive discipline, or file an affidavit averring that he was not permitted to do so, and the trial court's review was limited to the transcript of the proceedings at the August 16, 2011 hearing. In other words, it was not "incumbent" upon the trial court to independently inquire into the Department's policies as Furnas suggests.

{¶ 39} Furnas' "Argument" lacks merit, an abuse of discretion is not demonstrated, and the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FROELICH, J., concur.

Copies mailed to:

Jeffrey M. Silverstein
Jason P. Matthews
Douglas M. Trout
Hon. Mary L. Wiseman